## No. 16-3131

### IN THE
### UNITED STATES COURT OF APPEALS
### FOR THE SEVENTH CIRCUIT

————————————

MERYL SQUIRES CANNON, RICHARD KIRK CANNON,
ROYALTY PROPERTIES, LLC & CANNON-SQUIRES PROPERTIES, LLC

*Plaintiffs-Appellants,*

*v.*

FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS,
BMO HARRIS BANK, N.A., UNITED STATES OF AMERICA,
BAYVIEW LOAN SERVICING, LLC, FRANCIS L. KELDERMANS,
MCGINLEY PARTNERS, LLC, ROBERT MCGINLEY, & DOES 1-15,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 1:14-cv-05611, the Honorable Sara L. Ellis, Presiding

————————————

## BRIEF OF DEFENDANTS-APPELLEES
## FOREST PRESERVE DISTRICT OF COOK COUNTY,
## BMO HARRIS BANK, N.A., BAYVIEW LOAN SERVICING, LLC,
## FRANCIS KELDERMANS, MCGINLEY PARTNERS, LLC
## AND ROBERT MCGINLEY

————————————

Christopher W. Carmichael
Maureen Browne Schoaf
HOLLAND & KNIGHT LLP
131 South Dearborn St., 30th Flr.
Chicago, Illinois 60603
Tel: (312) 263-3600

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

(1)     The full name of every party that the attorney represents in the case:

**Forest Preserve District of Cook County, Illinois.**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court.

**Holland & Knight LLP**

(3)(i)     All parent corporations:

**Not applicable**

3(ii)     Any publicly held company that owns 10% or more of the party's or amicus' stock:

**Not applicable**

Attorney's Signature:  s/ Christopher W. Carmichael          Date: **5/15/17**

Attorney's Printed Name:  **Christopher W. Carmichael**

Counsel of Record pursuant to Circuit Rule 3(d):          Yes  **X**

Address:  **Holland & Knight LLP, 131 S. Dearborn St., 30th Fl.**

Phone Number:  **(312) 578-6674**          Fax Number:  **(312) 578-6666**

E-mail Address:  **christopher.carmichael@hklaw.com**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

(1)     The full name of every party that the attorney represents in the case:

**BMO Harris Bank N.A.**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court.

**Chapman and Cutler LLP**

(3)(i)     All parent corporations:

**BMO Harris Bank N.A. is wholly-owned by BMO Financial Corp., a Delaware holding company that is not publicly traded. BMO Financial Corp. is wholly-owned by the Bank of Montreal, Toronto, Canada.**

3(ii)     Any publicly held company that owns 10% or more of the party's or amicus' stock:

**Not applicable**

Attorney's Signature:  s/ David T.B. Audley          Date:  **5/15/17**

Attorney's Printed Name:  **David T.B. Audley**

Counsel of Record pursuant to Circuit Rule 3(d):          Yes  **X**

Address:  **Chapman and Cutler LLP**

Phone Number: **(312) 845-3000**          Fax Number: **(312) 516-3971**

E-mail Address: **audley@chapman.com**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

(1)     The full name of every party that the attorney represents in the case:

**Bayview Loan Servicing, LLC**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court.

**Smith & Weik, LLC**

(3)(i)     All parent corporations:

**Bayview Asset Management, LLC**

3(ii)     Any publicly held company that owns 10% or more of the party's or amicus' stock:

**Not applicable**

Attorney's Signature:  s/ **Michael J. Weik**          Date: **5/15/17**

Attorney's Printed Name:  **Michael J. Weik**

Counsel of Record pursuant to Circuit Rule 3(d):          Yes **_X_**

Address:  Smith & Weik, LLC, 1011 Lake Street, Suite 412, Oak Park, IL 60301

Phone Number:  **(708) 386-7203**          Fax Number:  **877-831-3973**

E-mail Address:  **mweik@smithweiklaw.com**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

(1)     The full name of every party that the attorney represents in the case:

**Francis L. Keldermans**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court.

**Miller Shakman & Beem LLP**

(3)(i)     All parent corporations:

**Not applicable**

3(ii)     Any publicly held company that owns 10% or more of the party's or amicus' stock:

**Not applicable**

Attorney's Signature:  s/ Brian J. Kerwin          Date: **5/15/17**

Attorney's Printed Name:  **Brian J. Kerwin**

Counsel of Record pursuant to Circuit Rule 3(d):          Yes ___          No **X**

Address:  **180 N. LaSalle Street, Suite 3600, Chicago, IL 60601**

Phone Number:  **(312) 759-7200**          Fax Number:  **(312) 263-3270**

E-mail Address:  **bkerwin@millershakman.com**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

(1)     The full name of every party that the attorney represents in the case:

**McGinley Partners, LLC and Robert McGinley.**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court.

**Messer Strickler, Ltd.**

(3)(i)     All parent corporations:

**Not applicable**

3(ii)     Any publicly held company that owns 10% or more of the party's or amicus' stock:

**Not applicable**

Attorney's Signature:  s/ Joseph S. Messer          Date: **5/15/17**

Attorney's Printed Name:  **Joseph S. Messer**

Counsel of Record pursuant to Circuit Rule 3(d):          Yes  **X**

Address:  **Messer Strickler, Ltd., 225 W. Washington St., Ste. 575, Chicago, IL**

Phone Number:  **(312) 334-3469**          Fax Number:  **(312) 334-3473**

E-mail Address:  **jmesser@messerstrickler.com**

# TABLE OF CONTENTS

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS** ........................................... i-v

**TABLE OF AUTHORITIES** ....................................................................... vii

**JURISDICTIONAL STATEMENT** ................................................................ 1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW** ................................... 2

**STATEMENT OF THE CASE** ..................................................................... 3

**SUMMARY OF ARGUMENT** ...................................................................... 8

**ARGUMENT** ........................................................................................... 8

   **1.**    **THERE WAS NO CONSTITUTIONAL TAKING BECAUSE THE FOREST PRESERVE DISTRICT ACTED IN ITS PROPRIETARY, NOT SOVEREIGN CAPACITY.** ..................................................................................... 11

      a.    *Res judicata* precludes Appellants from arguing the Forest Preserve District committed a taking ...................................................... 13

      b.    The Forest Preserve District did not physically take property that Appellants had an unrestricted right to possess ..................................... 17

      c.    The Forest Preserve District did not commit a regulatory taking by passing an ordinance authorizing participation in the foreclosure sale. .................................................................................... 18

   **2.**    **THERE WAS NO FRAUD IN REFUSING TO DISCLOSE THE IDENTITY OF THE LOAN PURCHASER.** ............................................................... 23

      a.    Neither Keldermans nor McGinley made an affirmative misrepresentation or engaged in fraudulent concealment ...................... 25

      b.    There was no fraud because there was no reliance. ................................. 29

      c.    No damages were proximately caused by the non-disclosure. ................. 32

   **3.**    **THE CONSPIRACY & AIDING & ABETTING CLAIMS WERE PROPERLY DISMISSED.** ....................................................................... 34

**CONCLUSION** ..................................................................................... 35

**FRAP 32 and CIRCUIT RULE 32 CERTIFICATION** ..........................................

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abcarian v. McDonald,*
  617 F.3d 931 (7th Cir. 2010) ................................................................. 11

*Adcock v. Brakegate, Ltd.,*
  164 Ill.2d 54 (1994) ............................................................................ 34, 35

*Alexander v. McKinney,*
  692 F.3d 553 (7th Cir. 2012) ................................................................ 22

*Ashcroft v. Iqbal,*
  566 U.S. 662 (2009) ............................................................................... 9

*Baker v. Forest Preserve District of Cook County, Ill.,*
  2015 IL App (1st) 141157 ................................... 7, 13, 14, 15, 16, 19, 20

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 563 (2007) .................................................................... 9, 33

*Brooks v. Ross,*
  578 F.3d 574 (7th Cir. 2009) ............................................................... 8, 14

*People ex rel. Burris v. Progressive Land Developers, Inc.,*
  151 Ill.2d 285 (1992) .................................................... 14, 15, 16, 17

*Cannon v. Forest Preserve District of Cook County, Ill., et al.,*
  No 13 C 6589, 2014 WL 1758475 (N.D. Ill. May 2, 2014) .................... 5, 6

*Champion Parts, Inc. v. Oppenheimer & Co.,*
  878 F.2d 1003 (7th Cir. 1989) ............................................................. 34

*Chi. Housing Auth. v. Lamar,*
  21 Ill.2d 362 (1961) ............................................................................ 20

*City of Chi. v. Fieldcrest Dairies, Inc.,*
  316 U.S. 168 (1942) ............................................................................ 34

*City of Chi. v. Loitz,*
  61 Ill.2d 92 (1975) .............................................................................. 20

*Cohen v. Am. Security Ins. Co.,*
   735 F.3d 601 (7th Cir. 2013) ........................................................................ 10, 27

*Conley v. Gibson,*
   355 U.S. 41 (1957) ........................................................................................... 9

*Connick v. Suzuki Motor Co., Ltd.,*
   174 Ill.2d 482 (1996).......................................................................................... 27

*Danforth v. United States,*
   308 U.S. 271 (1939) ..................................................................................... 20, 22

*Davis v. Brown,*
   357 Ill.App.3d 176 (2d Dist. 2005) ........................................................... 21

*DSI Corp. v. United States,*
   655 F.2d 1072 (Ct. Fed. Cl. 1981) ........................................................... 18

*Gash Assoc. v. Village of Rosemont, Ill.,*
   995 F.2d 726 (7th Cir. 1993) ...................................................................... 23

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,*
   128 F.3d 1074 (7th Cir. 1997) .................................................................... 10

*Gold v. Vasileff,*
   160 Ill.App.3d 125 (5th Dist. 1987)........................................................ 28

*Gonzalzles v. Am. Express Credit Corp.,*
   315 Ill.App.3d 199 (1st Dist. 2010) ......................................................... 29

*Hagee v. City of Evanston,*
   729 F.2d 510 (7th Cir. 1984) ...................................................................... 16

*People ex rel. Hartigan v. Ill. Commerce Com'n,*
   243 Ill.App.3d 544 (1st Dist. 1993) ......................................................... 17

*Heckler v. Deere & Co.,*
   556 F.3d 575 (7th Cir. 2009) ...................................................................... 10

*Hensler v. Busey Bank,*
   231 Ill.App.3d 920 (4th Dist. 1992)........................................................ 28

*Hughes Communications Galaxy, Inc. v. United States,*
   271 F.3d 1060 (Fed. Cir. 2001)................................................................. 11

*Janus v. AFSCME,*
   851 F.3d 746 (7th Cir. 2017) ...................................................................... 15

*Klump v. U.S.*,
    50 Fed. Cl. 268 (2001)................................................................ 12

*Lyons Sav. & Loan Ass'n v. Gash Assoc.*,
    189 Ill.App.3d 684 (1st Dist. 1989) ...................................... 22

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) .................................... 9, 10, 19

*Mitchell v. Skubiak*,
    248 Ill.App.3d 1000 (1st Dist. 1993) ............................. 26, 27

*NAB Bank v. LaSalle Bank, N.A.*,
    2013 IL App (1st) 121147 ........................................................ 22

*Ortega v. Ragen*,
    216 F.2d 561 (7th Cir. 1954) ................................................... 9

*Penn Central Transp. Co. v. City of New York*,
    438 U.S. 104 (1978) ................................................................ 19

*Phillips v. DePaul University*,
    2014 IL App (1st) 122817 ........................................................ 23

*Reid v. Harvey Motorcycle and Camper*,
    No. 05 C 5375, 2007 WL 4277435 (N.D. Ill. Nov. 30, 2007)............................ 29, 30

*Rogalla v. Christie Clinic, P.C.*,
    341 Ill.App.3d 410 (4th Dist. 2003)....................................... 32

*Russow v. Bobola*,
    2 Ill.App.3d 837 (2d Dist. 1972) ..................................... 26, 27

*San Remo Hotel, L.P. v. City & County of San Francisco, Cal.*,
    545 U.S. 323 (2005) ................................................................ 16

*Schmidt v. Eagle Waste & Recycling, Inc.*,
    599 F.3d 626 (7th Cir. 2010) ................................................... 9

*Shah v. Chi. Title & Trust Co.*,
    119 Ill.App.3d 658 (1st Dist. 1983) ...................................... 32

*Southern Comfort Campgrounds v. Federal Home Loan Bank Board*,
    Civ. A. No. 89-4417, 1995 WL 63090 (E.D. La. Feb. 14, 1995)............................ 22

*St. Christopher Assoc., L.P. v. United States*,
    511 F.3d 1376 (Fed. Cir. 2008).............................................. 11

*Stahelin v. Forest Preserve District of DuPage County,*
    376 Ill.App.3d 765 (2d Dist. 2007) ............................................................ 19, 20, 21

*State Sec. Ins. Co. v. Frank B. Hall & Co.,*
    258 Ill.App.3d 588 (1st Dist. 1994) ............................................................ 28, 31, 33

*United States v. Merchants Matrix Cut Syndicate,*
    219 F.2d 90 (7th Cir. 1955) ............................................................................ 35

*Walsh Constr. of Ill. v. Nat'l Union Fire Ins. Co. of Pittsburg, Penn,*
    153 F.3d 830 (7th Cir. 1998) ........................................................................... 14

*Warren v. Gov't Nat'l Mortgage Assoc.,*
    611 F.2d 1229 (8th Cir. 1980) .......................................................................... 12

*Wright v. Assoc. Ins. Co., Inc.,*
    29 F.3d 1244 (7th Cir. 1994) ........................................................................... 10

**Statutes**

805 ILCS 180/1-5 ............................................................................................... 25

**Other Authorities**

Fifth Amendment ............................................................. 8, 11, 12, 16, 22, 34

## JURISDICTIONAL STATEMENT

Appellants' jurisdictional statement is complete and correct.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.     Does a taking occur when a governmental entity acts as a market participant by purchasing a defaulted loan and using the state court process to foreclose on a property, just as a private party would?

2.     Can a party that rejects a proposal for settlement and refuses to consummate any agreement show reliance or damages to assert a claim for fraud?

## STATEMENT OF THE CASE

In December 2006, Royalty Properties, LLC and Cannon-Squires Properties, LLC purchased a 400-acre horse farm in Barrington Hills, Illinois with a $14,500,000 loan from Amcore Bank secured by a mortgage on the property. (Dkt. 60, 2d Am. Compl. ¶ 18; Dkt. 63-1, pgs. 1-74.) Meryl Squires Cannon and Richard Kirk Cannon were the members of Royalty Properties and Cannon-Squires Properties and guarantors of the loan. (Dkt. 60, 2d Am. Compl. ¶ 18; Dkt. 63-1, pgs. 75-76.)

In 2009, the loan matured and Amcore Bank initiated foreclosure proceedings in Illinois state court, entitled: *Amcore Bank, N.A. v. Royalty Properties, LLC et al.*, No. 09 CH 18291. (Dkt. 60-1 pg. 5; Dkt. 60, 2d Am. Compl. ¶ 20.) In April 2010, Amcore Bank, N.A. was closed by the Office of the Comptroller of the Currency, the FDIC was named receiver for the bank, and Amcore's assets were sold to BMO Harris Bank, N.A. (Dkt. 27-5, pg. 59; Dkt. 60, Am. Compl. ¶ 21.) In May 2010, the foreclosure court entered an order transferring possession of the entire 400-acre property to the care and control of a court-appointed receiver. (Dkt. 63-1, pgs. 88-91.) BMO Harris Bank was substituted in the foreclosure action for Amcore Bank and continued that process, which moved slowly when the Appellants contested the foreclosure. (Dkt. 60, Am. Compl. ¶¶ 21-22; Dkt. 1, Compl. ¶¶ 19, 29.)

Three years later, on February 4, 2013, BMO Harris Bank and the Forest Preserve District entered into a Loan Sale Agreement, whereby the Forest Preserve District would acquire the note, mortgage, and guarantees held by BMO Harris

Bank.  (Dkt. 60, 2d Am. Compl. ¶ 24; Dkt. 60-1, pgs. 5-20.)  The Loan Sale Agreement stated that the FDIC had approved BMO Harris Bank's sale of the note to the Forest Preserve District, provided that the sale closed by April 2013.  (Dkt. 60-1, p. 9.)

Subsequently, on February 12, 2013, counsel for the Forest Preserve District, Francis Keldermans, contacted the Cannons about potentially resolving the foreclosure.  (Dkt. 60-2, pgs. 14-23; Dkt. 60, 2d Am. Compl. ¶ 60.)  Keldermans provided a "Pre-Negotiation and Confidentiality Agreement," which explained the preliminary nature and inadmissibility of any discussions.  (Dkt. 60-2, pgs. 14-18.)  Keldermans met with the Cannons on February 13, 2013, and declined to disclose the identity of the loan purchaser.  (Dkt. 60-2, pg. 65; Dkt. 60, 2d Am. Compl. ¶ 48.)  The Appellants ultimately rejected the settlement overture, and in April 2013, Keldermans terminated further negotiations.  (Dkt. 60, 2d Am. Compl. ¶ 50; Dkt. 1, Compl. ¶ 55; Dkt. 60-2, pg. 25.)

On March 14, 2013, BMO Harris Bank sought approval in the foreclosure action for access to the 400-acre property to show it to a prospective purchaser, without disclosing the identity of the visitors.  The Appellants unsuccessfully pleaded with the state court to reveal the purchaser's identity.  (Dkt. 60-2, pgs. 39-57; Dkt. 60, 2d Am. Compl. ¶ 43.)  On March 19, 2013, the Board of the Forest Preserve District of Cook County authorized the acquisition of the note, mortgage, and, guarantees then held by BMO Harris Bank.  (Dkt. 60-1, pgs. 37-40.)

In April 2013, with FDIC approval, BMO Harris Bank and the Forest Preserve District extended the time for the loan sale to close.  (Dkt. 60-1, pgs. 44-45.)  On June 27, 2013, BMO Harris Bank assigned its rights in the loan documents to the Forest Preserve District of Cook County.  (Dkt. 60-1, pgs. 50-53; Dkt. 60, 2d Am. Compl. ¶ 25.)  After the assignment, the Forest Preserve District substituted for BMO Harris Bank in the foreclosure action.  (Dkt. 60, 2d Am. Compl. ¶ 26.)  On August 30, 2013, a judgment for foreclosure and sale was entered in the state court foreclosure proceedings in favor of the Forest Preserve District.  (Dkt. 63-1, pgs. 78-86; Dkt. 52, Am. Compl. ¶ 28.)

Also on August 30, 2013, Meryl and Richard Cannon and two other individuals, filed a declaratory and injunction action against the Forest Preserve District and BMO Harris Bank in Illinois state court, entitled:  *Baker v. Forest Preserve District of Cook County*, No. 13 CH 20057.  (Dkt. 18-1, pgs. 80-96.)  The action sought to declare that the Forest Preserve District lacked the authority to acquire the loan documents from BMO Harris Bank and to rescind that transaction. (Dkt. 18-1, pgs. 80-96.)

On September 13, 2013, Meryl and Richard Cannon filed an action in federal court (No. 1-13-cv-06589) alleging a conspiracy and seeking to enjoin the state court foreclosure proceedings.  *See Cannon v. Forest Preserve District of Cook County, Illinois, et al.*, No 13 C 6589, 2014 WL 1758475, at *1 (N.D. Ill. May 2, 2014).  The action was dismissed without prejudice for lack of jurisdiction after the district court found that the FDIC was not a proper party.  *Id*. at *2.  The requests for

injunctive relief against the state court foreclosure proceedings were dismissed with prejudice as barred by the Anti-Injunction Act.  *Id.* at *3.

On October 1, 2013, the Board of the Forest Preserve District of Cook County enacted an ordinance granting the Forest Preserve District authority to participate in the upcoming foreclosure sale.  (Dkt. 60-1, pgs. 22-35.)  Nine days later, on October 10, 2013, the foreclosure court entered an order transferring possession of the entire 400-acre property from the court-appointed receiver to the Forest Preserve District.  (Dkt. 63-1, pgs. 95-99.)  Eight days later, on October 18, 2013, the 400-acre property was auctioned at a foreclosure sale and the Forest Preserve District was the winning bidder at $14,500,000.  (Dkt. 63-1, pg. 101.)

On April 23, 2014, the trial court in *Baker v. Forest Preserve District* granted summary judgment in favor of the Forest Preserve District, finding the Forest Preserve District acted within its statutory authority in acquiring the loan.  (Dkt. 63-1, pg. 105.)  Shortly thereafter, on May 5, 2014, the foreclosure court confirmed the foreclosure sale and entered a deficiency judgment against the Appellants. (Dkt. 63-1, pgs. 107-113.)  Three days later, on May 8, 2014, a deed for the 400-acre farm was issued to the Forest Preserve District.  (Dkt. 63-1, pgs. 115-119.)

On July 22, 2014, Meryl and Richard Cannon filed the present federal action, naming the United States, instead of the FDIC, and asserting claims for conspiracy and fraud.  (Dkt. 1, Compl.)  The complaint alleged, among other things, that the Forest Preserve District overpaid for the property, based on a September 2012 appraisal obtained by Meryl Cannon.  (Dkt. 1, Compl. ¶¶ 20, 26-28; Dkt. 1-2, pgs. 2-

4.)  The United States moved to dismiss the complaint because the Federal Tort
Claims Act does not permit claims of fraud against the United States.  (Dkt. 12.)
The district court dismissed the fraud claims against the United States with
prejudice, and the fraud and conspiracy claims against the other defendants
without prejudice.  (Dkt. 40, Opinion & Order.)

On May 18, 2015, the Illinois appellate court issued a decision in the appeal
of *Baker*, finding that the Forest Preserve District had the authority to acquire the
loan documents, and that the acquisition did not conflict with the eminent domain
process.  2015 IL App. (1st) 141157, ¶¶ 45-47.  On September 30, 2015, the Illinois
Supreme Court denied further review of *Baker*.  (Dkt. 63-1, pg. 123.)

On October 21, 2015, Meryl and Richard Cannon filed an amended complaint
in this case asserting an unconstitutional taking, conspiracy, and fraud.  (Dkt. 52,
Am. Compl.)  In this amended complaint, the Cannons asserted for the first time
that the Forest Preserve District committed a taking by evading the eminent
domain process and foreclosing on the mortgage.  (Dkt. 52, Am. Compl. ¶¶ 1-38.)
The amended complaint also asserted that the FDIC, BMO Harris Bank, and the
other defendants aided and abetted the taking, fraudulently misrepresented the
identity of the prospective loan purchaser, and conspired to prevent the Cannons
from learning the identity of the prospective loan purchaser.  (Dkt. 52, Am. Compl.
¶¶ 39-65.)  The defendants moved to dismiss on jurisdictional grounds, arguing that
the absence of the former title holders and mortgagors (Royalty Properties, LLC and
Cannon-Squires Properties, LLC) prevented adjudication of the claims.  (Dkt. 57,

Motion to Dismiss.)  The Cannons were given an opportunity to amend and add the missing parties.  (Dkt. 59, Order.)

On November 30, 2015, the Cannons filed the Second Amended Complaint, the pleading at issue in this appeal, adding Royalty Properties, LLC and Cannon-Squires Properties, LLC, and alleging the same takings, aiding and abetting, fraud, and conspiracy claims as in the amended complaint.  (Dkt. 60, 2d Am. Compl.)  After briefing, the district court dismissed the Second Amended Complaint with prejudice.  (Dkt. 81, Opinion & Order; A1-16.)

## SUMMARY OF ARGUMENT

Appellants failed to state a Fifth Amendment takings claim because the Cook County Forest Preserve District acted in its proprietary, rather than in its sovereign capacity, by acquiring and enforcing the mortgage contract.  Appellants also failed to sufficiently allege fraud by the Appellees because Appellants complain about potential transactions that they did not consummate and they did not establish reliance or damages.  Finally, the aiding and abetting and conspiracy claims were properly dismissed because there was no unlawful predicate act and the underlying claims failed.

## ARGUMENT

The district court's dismissal of the Second Amended Complaint is reviewed *de novo.  Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009).

Appellants' brief argues that in dismissing the Second Amended Complaint, the district court misapplied the standards for determining the sufficiency of a pleading.  (Dkt. 17, pgs. 23-24.)  To support this argument, Appellants' brief relies

on *Conley v. Gibson*, 355 U.S. 41 (1957), the dissent in *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), and a district court case. (Appellants' Br. pgs. 23-24.) The standards articulated in *Conley v. Gibson* were overruled by *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. *Twombly*, 550 U.S. 544, 563 (2007) ("after puzzling the profession for 50 years, this famous observation [the 'no set of facts' language] has earned its retirement"); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010) (explaining that plaintiff's reliance on *Conley v. Gibson* was "misplaced" because "*Conley* [has] been abrogated by *Bell Atlantic v. Twombly*"). The district court properly applied the current pleading standard. (A-5-6.)

In assessing the sufficiency of a complaint, well-pled facts are taken as true, and legal conclusions, conclusory allegations, and characterizations are disregarded. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."); *Ortega v. Ragen*, 216 F.2d 561, 563 (7th Cir. 1954) ("we disregard, as mere conclusions, the loose and general, the factually unsupported, characterizations of the complained of acts of the defendants, as malicious, conspiratorial, and done for the purpose of depriving plaintiffs of their constitutional rights") (citation and quotations omitted). The Second Amended Complaint is filled with legal conclusions, conclusory allegations, and characterizations. For example, the complaint references "U.S. Supreme Court precedent," and cites cases and statutes to assert legal theories. (Dkt. 60, 2d Am. Compl. ¶ 31, & nn.7-11.) The complaint also characterizes acts pejoratively, such as

"the underhanded manipulation of the foreclosure process." (*Id*. ¶¶ 37, 40-46 & nn.4-6). All of these legal conclusions, conclusory allegations, and characterizations are excised when determining if a claim is stated. *See McCauley*, 671 F.3d at 616; *Cohen v. Am. Security Ins. Co.*, 735 F.3d 601, 611 (7th Cir. 2013) ("[b]ut simply calling the commission a kickback doesn't make it one."). Stripped of these allegations, the complaint merely asserts that the Forest Preserve District purchased the note and mortgage for the 400-acre property and continued the state foreclosure process started by the predecessor banks.

The parties appended a number of documents to the pleadings, including filings and decisions from the related state court proceedings. The district court properly considered all of the materials provided by the parties in determining the plausibility of the complaint because the documents are central to the claims, referenced in the complaint, or contained facts appropriate for judicial notice, such as matters of public record. *See Wright v. Assoc. Ins. Co. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Heckler v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997). The materials included the court records from the state court foreclosure action and *Baker v. Forest Preserve District* action, the deed from the recorder's office, and the note and mortgage. These documents are central to the claims, referenced in the complaint, or matters of public record and therefore were appropriately considered. (Dkt. 60, ¶¶ 18-23, 26, 33, 37 & n.3.) Appellants appear

to concede as much, asking this Court to "take judicial notice" of the foreclosure proceedings.  (Appellants' Br. pg. 8, n.4.)

Finally, although Appellants ask the Court to review the foreclosure proceedings, Appellants often describe the information contained in the documents in self-serving terms.  The actual content in the documents should prevail over Appellants' characterizations.  *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) (explaining that where the allegations contradict the exhibits, "the exhibits trump the allegations").

1.  **There Was No Constitutional Taking Because The Forest Preserve District Acted In Its Proprietary, Not Sovereign Capacity.**

Appellants assert that the Forest Preserve District committed a taking when it purchased a note and mortgage and participated in the state court foreclosure process.  Appellants' argument runs contrary to the well-established principle that when a governmental entity enforces a contract, just as any other private party might, the government acts in its proprietary, not sovereign capacity, and there is no Fifth Amendment taking.  *See St. Christopher Assoc., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed. Cir. 2008) ("In general, takings claims do not arise under a government contract because, as stated by the Court of Federal Claims, the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract."); *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001) ("'the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract.  In such

instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.'") (citation omitted). The district court correctly dismissed Appellants' takings and aiding and abetting claims because the Forest Preserve District acted in its proprietary capacity. (A-10-11.)

The Forest Preserve District acquired the 400-acre property at issue by purchasing a note and mortgage and then participating in the state court foreclosure proceedings. (Dkt. 60 ¶¶ 24-26 & nn.4-6; Dkt. 63-1.) A Fifth Amendment taking does not occur when a governmental entity enforces a mortgage contract and acquires property through the foreclosure process. *See Warren v. Gov't Nat'l Mortgage Assoc.*, 611 F.2d 1229, 1234-35 (8th Cir. 1980) (holding that foreclosure conducted by governmental entity in accordance with the loan documents was not a taking, explaining that "[a]s a party to the contract, and even though it was a governmentally-owned and authorized entity, GNMA had a right to resort to its contractual remedies just as a purely private entity had."); *Klump v. U.S.,* 50 Fed. Cl. 268, 271, (2001) ("[t]hese cases teach that when the government simply asserts its ultimate right to ownership of an interest in property through the same legal channels that any other individual would employ to assert such an interest, no taking under the Fifth Amendment occurs."). Appellants' citation and quotation of takings cases where the governmental entity acted in its sovereign capacity are inapplicable because the Forest Preserve District acted in its proprietary capacity.

a.    *Res judicata* precludes Appellants from arguing the Forest Preserve District committed a taking.

Prior to the filing of this action, the acquisition of the loan documents and foreclosure of the 400-acre property by the Forest Preserve District was challenged by two of the Appellants in Illinois state court.  The plaintiffs in *Baker v. Forest Preserve District of Cook County, Ill.* argued, among other things, that the Forest Preserve District was misinterpreting its statutory powers "in an effort to 'take' private property without adhering to the related statutory and constitutional protections." (Dkt. 76-1, *Baker* 2d Am. Compl. ¶¶ 61-62.)  The trial court in *Baker* disagreed, concluding that the Forest Preserve District's purchase of the note and mortgage from BMO Harris Bank and participation in the foreclosure proceedings was within the Forest Preserve District's statutory grant of authority.  *Baker v. Forest Preserve District of Cook County, Ill.*, 2015 IL App (1st) 141157, ¶ 17.  On appeal, the plaintiffs in *Baker* argued that the Forest Preserve District's acquisition of Horizon Farms conflicted with "the constitutional protections afforded to private property owners in eminent domain proceedings."  *Id.* ¶ 21.  The Illinois appellate court disagreed, concluding that the Forest Preserve District's acquisition through the note, mortgage, and participation in the foreclosure did not "conflict with the process of acquiring property by eminent domain."  *Id.* ¶¶ 45-46.  The Illinois appellate court found that the Forest Preserve District acted in its propriety

capacity, not sovereign capacity, and could engage in "facially 'private'" activities like "purchasing a mortgage and participating in a foreclosure sale." *Id*. ¶ 42.

Although the district court did not directly address Appellees' *res judicata* arguments, this Court may affirm "on any ground contained in the record." (A-9, n.9, A10-11); (Dkt. 63, pg. 7; Dkt. 76, pgs. 3-6); *Brooks*, 578 F.3d at 578. Since *Baker* is an Illinois state decision, this Court looks to Illinois law to determine whether *res judicata* bars the current action. *See Walsh Constr. of Ill. v. Nat'l Union Fire Ins. Co. of Pittsburg, Penn*, 153 F.3d 830, 832 (7th Cir. 1998). Under Illinois law, a judgment is an absolute bar to subsequent actions on the same claims or demands, as well as "matters which could have been decided in that suit," if there was: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the cause of action; and (3) an identity of the parties or their privies." *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill.2d 285, 295 (1992). All three requirements are met here: *Baker* was a final decision on the merits; the plaintiffs in *Baker* argued that the Forest Preserve District unlawfully circumvented the protections afforded by the law of eminent domain; and the action was prosecuted by two of the Appellants. *Baker* is therefore *res judicata* and precludes Appellants from asserting that the Forest Preserve District acted in its sovereign capacity and that a taking occurred.

The *Baker* decision became final when Illinois Supreme Court denied further review. (Dkt. 63-1, pg. 123.) The appellate decision in *Baker* was rendered by a

court of competent jurisdiction about an acquisition that occurred in Illinois by an

Illinois public body.  2015 IL App (1st) 141157.

There is identity of the causes of action in *Baker* and this action.  Under

Illinois law, "[a] cause of action is defined by the facts which give the plaintiff a

right to relief."  *Progressive Land Developers*, 151 Ill.2d at 295.  Changing the legal

theory does not alter the identity of the causes of action.  Rather, "[i]f the same facts

are essential to the maintenance of both proceedings or the same evidence is needed

to sustain both, then there is identity between the allegedly different causes of

action asserted and *res judicata* bars the latter action."  *Id*. (citation and quotations

omitted).  *Baker* and this action are based on the same core facts – the Forest

Preserve District's purchase of the note and mortgage from BMO Harris Bank and

participation in the foreclosure proceedings.  2015 IL App (1st) 141157 ¶¶ 4-11.  The

difference in legal theories between the action here and *Baker* is immaterial to the

*res judicata* analysis.  As the Illinois Supreme Court found in *Progressive Land

Developers* and this Court recently concluded in *Janus v. AFSCME*, different claims

that arise from the same core of facts are barred by an earlier decision on the

merits.  151 Ill.2d at 296 (finding causes of action identical because the same facts

and proof were required for both); 851 F.3d 746, 748 (7th Cir. 2017) (finding prior

state claims and current federal claims arose from the same facts).

The identity of causes of action is further demonstrated by the fact that

Appellants asserted a closely related theory in *Baker*, arguing that the Forest

Preserve District engaged in eminent domain to acquire the property.  *See* (Dkt. 76-

1, *Baker* 2d Am. Compl. ¶¶ 61-62); *Baker*, 2015 IL App (1st) 141157, ¶ 21.  As this Court explained in *Hagee v. City of Evanston*, *res judicata* precludes "not only matters that in fact were raised and decided in an earlier suit involving the same cause of action and the same parties, but also all other matters that could have been raised in the earlier suit."  729 F.2d 510, 514 (7th Cir. 1984).  The plaintiffs in *Baker* argued that the Forest Preserve District improperly avoided the eminent domain process by foreclosing on the mortgage.  This action presents that same theory repackaged into a Fifth Amendment takings claim.  The earlier rejection of the eminent domain theory in *Baker* should preclude the current takings claims. *See Hagee*, 729 F.2d at 514 (finding claims barred by *res judicata* because "their current suit is in effect a reincarnation of their first suit, brought under a different legal theory and requesting a different kind of relief."); *San Remo Hotel, L.P. v. City & County of San Francisco, Cal.*, 545 U.S. 323, 342-43 (2005) (holding "that issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court.").

Finally, there is an identity of the parties or their privies.  Meryl and Richard Cannon were named plaintiffs in *Baker* and therefore had a full and fair opportunity to raise these issues in that litigation.  The two additional plaintiffs in this action, two LLCs controlled by Meryl and Richard Cannon, had an identity of interests with the Cannons.  For purposes of *res judicata*, "[i]t is the identity of interests that controls in determining privity, not the nominal identity of the parties." *Progressive Land Developers*, 151 Ill.2d at 296.  As the Illinois courts have

- 16 -

explained, privity exists between "'parties who adequately represent the same legal interests.'"  *Id.* (applying *res judicata* to subsequent lawsuit, finding Nation of Islam adequately represented the Attorney General's interests in litigation over charitable assets) (citations omitted); *People ex rel. Hartigan v. Ill. Commerce Com'n*, 243 Ill.App.3d 544, 551 (1st Dist. 1993) (applying *res judicata* to subsequent lawsuit, finding individual taxpayer's interests were adequately represented in earlier action by governmental entities and consumer groups).  Royalty Properties and Cannon-Squires Properties share the same legal interests with Meryl and Richard Cannon, as all of them are joint plaintiffs in the current action.  There was therefore an identity of interests between the plaintiffs in *Baker* and the Appellants in this case.

The takings claims should be barred by *res judicata*.  The claims arise out of the same core set of facts, and were either essentially raised in *Baker* or could have been raised.

> b.  The Forest Preserve District did not physically take property that Appellants had an unrestricted right to possess.

In the alternative, Appellants assert that the Forest Preserve District committed a physical taking by erecting signs and patrolling the 400-acre property. (Appellants' Br. pgs. 25, 32.)  Appellants complain about acts that allegedly occurred on the property in the fall of 2013 during the foreclosure process, after their possessory rights had been restricted by the state foreclosure court.  The state court placed the property under the possession and control of a court-appointed receiver in 2010.  (Dkt. 63-1, Exh. 6.)  That court-appointed receiver had the "full power and authority with respect to the control, management, and improvement of

the Property." (*Id*. pg. 88.)  The order appointing the receiver was superseded and possession was transferred to the Forest Preserve District by an order entered on October 10, 2013.  (Dkt. 63-1, Exh. 8.)  Count 2 of the Second Amended Complaint states that the order placing the Forest Preserve District in possession is the source of Appellants' grievance:  "Taking Without Just Compensation to Its Owners, **by Taking Possession as Mortgagee**, and then Foreclosing."  (Dkt. 60, 2nd Am. Compl. pg. 9, emphasis added.)  The transfer of possession through the foreclosure process and the exercise of any associated rights, like erecting signage, is not a taking.  *See DSI Corp. v. United States*, 655 F.2d 1072, 1074 (Ct. Fed. Cl. 1981) ("there is no taking where, pursuant to court order, the government is in possession of the property . . . ").  Since Appellants' possessory rights were subject to the state foreclosure process, there was no taking and any issues related to possession should have been raised in that forum.

      c.      <u>The Forest Preserve District did not commit a regulatory taking by passing an ordinance authorizing participation in the foreclosure sale</u>.

Appellants also argue that a separate regulatory taking occurred when the Board of the Forest Preserve District of Cook County enacted an ordinance on October 1, 2013.  (Appellants' Br. pgs. 31-34.)  The ordinance, passed after the Forest Preserve District acquired the note and mortgage and joined the foreclosure proceedings, authorized the Forest Preserve District to participate in the upcoming foreclosure sale.  Appellants characterize the ordinance as imposing regulations that interfered with their use and enjoyment of the 400-acre property.  (Dkt. 60 ¶¶ 31-32; Appellants' Br. pgs. 31-34.)  The interpretation of the ordinance is a legal

issue and Appellants' subjective characterizations of the enactment are not taken as true.[1]  *See McCauley*, 671 F.3d at 616 (observing that legal conclusions are disregarded); *Stahelin v. Forest Preserve District of DuPage County*, 376 Ill.App.3d 765, 773 (2d Dist. 2007) (explaining that allegations of drastic impact of the ordinances "need not be accept[ed] as true" because "the interpretation of an ordinance is a question of law"); *see also Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 136 (1978) (rejecting takings claim based on legal restrictions placed on property by city ordinance and commenting that "Appellants, moreover, exaggerate the effect of the law on their ability to make use of the air rights above the Terminal.").  The actual terms of the ordinance do not support Appellants' assertions.

As the district court and Illinois appellate court observed, the October 2013 ordinance was prospective and authorized the Forest Preserve District's participation at the foreclosure sale.  *See* (A-8-9); *Baker*, 2015 IL App (1st) 141157, ¶ 8.  The October 1, 2013 Journal of Proceedings generally describes the purpose as the "proposed land acquisition near spring lake nature preserve."  (Dkt. 60-1, Ordinance excerpt, pg. 30.)  The Journal of Proceedings explains the end result the Forest Preserve District intended – to create a forest preserve to "contain and connect **lands now owned and lands to be acquired** . . . ."  (*Id.* pg. 25, emphasis added.)  The text further explains that the "Forest Preserve District of Cook County ('District') has identified a parcel of land **for acquisition** that would add to the

---

[1] Appellants agree that the interpretation of the ordinance is an issue of law.  (Appellants' Br. pgs. 22 and 33.)

District's current holdings near Spring Lake Nature Preserve." (*Id.* pg. 31, emphasis added.)  Finally, the ordinance explicitly authorized the Forest Preserve District to participate in the foreclosure sale, and bid up to a specific dollar amount. (*Id.* pgs. 31-33.)  While the ordinance contains general recitations of the Forest Preserve District's purpose and powers, including condemnation, nowhere does the ordinance actually authorize any eminent domain action or impose specific regulations on the 400-acre parcel.  Contrary to Appellants' assertions, the creation of a forest preserve explicitly depended on the acquisition through the foreclosure sale.  (*Id.*, pgs. 29-31.)

Appellants' argument about the effect of the ordinance is legally incorrect because even explicit governmental interest in acquiring property is not a taking. *Chi. Housing Auth. v. Lamar*, 21 Ill.2d 362, 366 (1961) ("[t]he fact that at some future time a public body, with power of eminent domain, may require the land of a private owner, is one of the conditions on which the owner holds land in this State."); *City of Chi. v. Loitz*, 61 Ill.2d 92, 97 (1975) ("The general rule followed in Illinois and most other jurisdictions is that mere planning or plotting in anticipation of public improvement does not constitute a 'taking' or damaging of the property affected.").  Thus, the identification of the 400-acre property in the October 2013 ordinance as subject to acquisition or condemnation by the Forest Preserve District does not constitute a taking.  *See Danforth v. United States*, 308 U.S. 271, 286 (1939) (holding that "[t]he mere enactment of legislation which authorizes condemnation of property cannot be a taking.");  *Stahelin*, 376 Ill.App.3d at 775 ("the

taking of land by eminent domain is not accomplished by passing resolutions or ordinances or by negotiating with the owner for the purchase of it or by serving notice of the owner that land may be acquired for public purposes.") (citation and quotations omitted).  Likewise, designating the 400-acre property as a future forest preserve in the October 2013 ordinance did not constitute a taking.  *See Davis v. Brown*, 357 Ill.App.3d 176, 183 (2d Dist. 2005) (finding that "recording of a map denoting the right-of-way for possible future highway construction" was not a taking); *Stahelin*, 376 Ill.App.3d at 775 (finding enactment of ordinance authorizing acquisition was not a taking).  Thus, the district court was correct in concluding that the ordinance did not constitute a regulatory taking.  (A-8-9.)

Appellants also claim that a taking occurred because the intended acquisition scared away other bidders, diminished the value of the property prior to the foreclosure sale, and allowed the Forest Preserve District to underpay for the property.  (Appellants' Br. pgs. 33-34; Dkt. 60, 2d Am. Compl. ¶¶ 32-33.)  Appellants assert that they should be awarded the difference in value between the foreclosure sale price and the value they assert the property was worth.[2]  This theoretical

---

[2] Appellants inconsistently described the theoretical value of the property.  In the original complaint, they asserted that the Forest Preserve District overpaid for the property, citing a $7,000,000 appraisal conducted months before the 2013 loan sale.  (Dkt. 1, Compl. ¶ 20; Dkt. 1-2, 9/10/2012 Appraisal.)  They made that same argument in *Baker*, relying on the same appraisal.  (Dkt. 76-1, pgs. 9-25.)  In the Second Amended Complaint, Appellants took the position that the Forest Preserve District underpaid, relying on a 2007 pre-recession appraisal valuing the property at $29,000,000, if the parcels were sold individually.  (Dkt. 60, 2nd Am. Compl. ¶ 20.)  Appellants' brief also asserts that the Forest Preserve District "admitted" a higher value, citing the Board's authorization to bid over $20 million for the property.  (Appellants' Br. pg. 15.)  The minutes, however, show the Board simply authorized the Forest Preserve District to credit bid at the foreclosure sale up to the amount of the outstanding balance on the note, $20,449,561.  (Dkt. 60-1, pg. 31; Dkt. 63-1 pg. 83.)

diminution in value, allegedly occurring as a result of the Forest Preserve District's interest in the property, is not a taking. *See Danforth,* 308 U.S. at 285 ("[a] reduction or increase in the value of property may occur by reason of legislation or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense."); *Southern Comfort Campgrounds v. Federal Home Loan Bank Board*, Civ. A. No. 89-4417, 1995 WL 63090, at *2 (E.D. La. Feb. 14, 1995) (holding that government participating in "the foreclosure sale did not constitute a taking under the Fifth Amendment"); *see also Lyons Sav. & Loan Ass'n v. Gash Assoc.*, 189 Ill.App.3d 684, 688 (1st Dist. 1989) (rejecting argument that "the Village's pending condemnation proceeding depressed the value of the property, and thus allowed the Village to circumvent its constitutional obligation to pay just compensation in its condemnation suit."). Moreover, the assertion that the property's value was depressed is incorrect. The amount paid at the foreclosure sale constitutes the conclusive measure of the value of the property. *See NAB Bank v. LaSalle Bank, N.A.,* 2013 IL App (1st) 121147, ¶ 20.

Appellants repeatedly characterize the state court proceedings and the foreclosure sale process as a "sham." (Dkt. 60, 2d Am. Compl. ¶¶ 27-37; Appellants' Br. pgs. 17, 26-29.) Appellants' disagreement with the conduct of the state court proceedings does not give rise to a takings claim.[3] *See Alexander v. McKinney*, 692

---

[3] Appellants' brief also complains about what occurred post-foreclosure, based on materials that the district court declined to supplement into the record. (Appellants' Br. pgs. 30-31; Dkt. 96, 9/9/16 Order.) Since those issues were not included in the record they are not appropriately argued here.

F.3d 553, 557 n.2 (7th Cir. 2012) ("[i]t would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to effectuate due process.") (emphasis in original); *Gash Assoc. v. Village of Rosemont, Illinois*, 995 F.2d 726, 727-28 (7th Cir. 1993) ("[d]ominating this case is a simple fact:  GASH objects to the outcome of a judicial proceeding and filed a separate suit to get around it.").

**2.    There Was No Fraud In Refusing To Disclose The Identity Of The Loan Purchaser.**

Appellants allege that in February 2013, the attorney representing the Forest Preserve District, Francis Keldermans, approached the Appellants about negotiating a potential settlement.  (Dkt. 60-2, Exhs. 20 & 23; Dkt. 60, 2d Am. Compl. ¶¶ 48-49; Dkt. 60-2, Exh. 14.)  Appellants also allege that about a month later the former owner of the property, McGinley, on behalf of himself and McGinley Partners, approached them about amicably resolving the foreclosure.  (Dkt. 60, 2d Am. Compl. ¶¶ 57-65.)  Although Appellants refused both offers – and thus did not consummate any transaction based on the discussions – Appellants nevertheless seek to hold Keldermans and McGinley liable for fraud.

To state a claim for common law fraud under Illinois law, Appellants were required to show:  "(1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Phillips v. DePaul University*, 2014 IL App (1st) 122817, ¶ 71.  The district court concluded that

Appellants could not demonstrate either reliance or damages, having rejected the offers to compromise, and that neither Keldermans nor McGinley had a duty to disclose.  (A-12-15.)

The Second Amended Complaint alleges that on February 13, 2013 – after BMO Harris Bank and the Forest Preserve District entered into a Loan Sale Agreement, but before the Forest Preserve District's Board had formally approved the transaction – Keldermans requested a meeting to discuss whether Appellants might be interested in a "deed-in-lieu-of-foreclosure agreement" with the "Purchaser" who had entered into the Loan Sale Agreement with BMO Harris Bank.  (Dkt. 60, 2d Am. Compl. ¶¶ 48, 55; Dkt. 60-2, Ex. 11.)  Keldermans provided Appellants with a "Pre-Negotiation and Confidentiality Agreement," which described the "Purchaser" on the signature line as "Horizon Farms Loan Acquisition LLC, an Illinois limited liability company to be formed."  (Dkt. 60-2, Ex. 11.)  Appellants later met with Keldermans at his law office to discuss potential settlement.  (Dkt. 60, 2d Am. Compl. ¶¶ 42, 48; Dkt. 60-2, Exh. 12.)  During the meeting, Appellants "repeatedly asked" Keldermans to disclose the identity of his client, but Keldermans would not do so.  (Dkt. 60, 2d Am. Compl. ¶ 48.)  Appellants allege that when they asked whether the LLC "was one individual or a group of individuals," Keldermans responded that "the Purchaser 'was not just one

individual.'" (*Id.*)  Appellants did not accept Keldermans' settlement offer, and settlement discussions ended.  (*Id.* at ¶ 58; Dkt. 60-2, Exh. 14.)

According to the Second Amended Complaint, McGinley contacted Appellants soon thereafter and arranged a meeting on March 11, 2013.  (Dkt. 60, 2d Am. Compl. ¶ 60.)  At that meeting, McGinley allegedly told Appellants that a "group of neighbors" was interested in acquiring the property.  (*Id.*)  Appellants "asked McGinley to identify the neighbors, explaining that there were certain neighbors with whom Plaintiffs would not be willing to negotiate or share title, but McGinley said he was not authorized to disclose their names." (*Id.*)  Appellants told McGinley that Mr. Cannon was residing in the main Estate house, and that they would be willing to consider an offer that would permit them to "share or split ownership of the Estate." (*Id.* at ¶ 64).  The next day, Keldermans presented a new offer to Appellants, which would have permitted them to retain title to the main Estate house – leading Appellants to believe that McGinley had shared his conversation with the Forest Preserve District.  (*Id.* at ¶ 64, n.17 and 18.)  Appellants rejected the offer.

      a.     <u>Neither Keldermans nor McGinley made an affirmative</u> <u>misrepresentation or engaged in fraudulent concealment</u>.

Appellants argument on appeal – that Keldermans made a false statement in reference to the LLC – rests on the mistaken legal conclusion (for which they cite no authority) that "a government entity like the FPD could not operate as an LLC." (Appellants' Br. pg. 35.)  The Illinois Limited Liability Companies Act includes governmental bodies in the class of "persons" allowed to own and control LLC's.  805

ILCS 180/1-5 (defining "members" and "managers" as "persons" given membership or manager status under the operating agreement or Act, and defining "person" to include "governmental bodies").  Moreover, when specifically asked to disclose the identity of the "Purchaser," Keldermans declined and would only say there was not "just one individual."  (Dkt. 60, 2d Am. Compl. ¶¶ 48 & 60.)  That was not a misrepresentation.

Appellants' characterization of McGinley's statement as a misrepresentation is likewise unsupported.  (Appellants' Br. pg. 40.)  The "group of neighbors" he referred to could have included the Forest Preserve District, which owned the nearby Spring Lake Nature Preserve.  (Dkt. 60-1, Exh. 3 pgs. 30-31.)  Moreover, McGinley specifically said "he was not authorized to disclose" the names of the interested parties.  (Dkt. 60, 2d Am. Compl. ¶ 60.)  McGinley made no affirmative misrepresentation.

Appellants rely on two cases involving the sale of homes to argue that Keldermans and McGinley had an affirmative duty to disclose the Forest Preserve District's interest in purchasing the loan.  (Appellants' Br. pg. 36, & n.17.)  In *Russow v. Bobola*, the Illinois appellate court held that while silence in contracting does not normally amount to fraud, in the context of a home sale, "[s]ilence accompanied by deceptive conduct" can result in active concealment and create a duty to speak.  2 Ill.App.3d 837, 841 (2d Dist. 1972).  In *Mitchell v. Skubiak*, another case involving the sale of a home, the court cited *Russow* and reached the same result.  248 Ill.App.3d 1000, 1005 (1st Dist. 1993).  Both *Russow* and *Mitchell*

- 26 -

pointed to specific acts of deceptive conduct, such as painting over water marks from a flood and explaining away cracks in a ceiling.

Neither the reference to an inchoate LLC in the document Keldermans provided, nor McGinley's purported statement about "neighbors" is analogous to the acts in *Russow* or *Mitchell*. Keldermans and McGinley did not deceptively mask or alter information otherwise accessible to Appellants. Rather, Keldermans and McGinley consistently stated an unwillingness to identify the note purchaser, putting Appellants on notice that they were withholding information and would have to pursue other sources. (Dkt. 60, 2d Am. Compl. ¶¶ 48 & 60.) Had Appellants not met with either Keldermans or McGinley they would have been no closer to discovering the purchaser's identity. Affirmatively refusing to disclose information to an adversarial and litigious party is not like the conduct in *Russow* or *Mitchell*.

Recognizing the weakness of the affirmative misrepresentation theory, Appellants argue that Keldermans and McGinley had a duty to disclose the identity of the purchaser under the state law doctrine of "fraudulent concealment." (Appellants' Br. pg. 36 & n.17.) While omissions can be "actionable as fraudulent concealment" in Illinois, that occurs "only in limited circumstances." *Cohen v. Am. Security Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013). Fraudulent concealment requires special factors triggering a duty to disclose, such as a confidential or fiduciary relationship. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 500 (1996) ("[i]n order to state a claim for fraudulent concealment, a plaintiff must allege that

the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff.").  The Second Amended Complaint does not plead any facts showing a special or fiduciary relationship arose between Keldermans or McGinley and the Appellants.  (Dkt. 60, 2d Am. Compl. ¶¶ 48-52, 60-65.)  Instead, the complaint alleges that Appellants were engaged in settlement negotiations with adversaries.  (*Id.*)  A fiduciary or confidential relationship does not arise in circumstances where two parties are negotiating terms.  *See, e.g., State Sec. Ins. Co. v. Frank B. Hall & Co.*, 258 Ill.App.3d 588, 597 (1st Dist. 1994) ("[t]he mere fact that business transactions occurred or that a contractual relationship existed is insufficient to support such a [fiduciary relationship] finding.").

Appellants contend that a confidential or fiduciary relationship arose because they purportedly placed "trust and confidence" in Keldermans.  (Appellants' Br. pgs. 36-37, 40-41.)  This contention is not found anywhere in the Second Amended Complaint.  In any event, any trust or confidence Appellants may have placed in Keldermans, the opposing party's attorney whose duty was to "represent his client with zeal and undivided loyalty," was legally unfounded.  *Gold v. Vasileff*, 160 Ill.App.3d 125, 127-28 (5th Dist. 1987) (finding that any trust or confidence was "unreasonably placed and could not be the basis for an equitable type of action founded on breach of a fiduciary or confidential relationship").  Moreover, the Second Amended Complaint fails to allege any facts demonstrating that Appellants actually placed any trust or confidence in Keldermans or McGinley, or that Keldermans or McGinley accepted that trust.  *See Hensler v. Busey Bank*, 231

Ill.App.3d 920, 928 (4th Dist. 1992) ("[i]n order to establish a fiduciary relationship, the trust or confidence allegedly reposed by the first party must actually be accepted by the second party.").

Nor does the Second Amended Complaint plead any facts showing that Richard Cannon (an attorney) and Meryl Cannon (a pharmaceutical company CEO) suffered from conditions, such as disparity in age, health, or mental ailment, that could give rise to a fiduciary relationship. *See Gonzalzles v. Am. Express Credit Corp.*, 315 Ill.App.3d 199, 210-11 (1st Dist. 2010) ("[p]laintiff, a licensed physician, has also failed to plead any disparity between his education and business knowledge and that of defendants which might give rise to a fiduciary relationship."). Appellants argument that a fiduciary or confidential relationship arose is unsupported by any allegation of fact.

      b.   <u>There was no fraud because there was no reliance.</u>

Appellants cannot establish reliance to support their fraud claims. They do not allege that the purportedly false statements duped them into entering into a transaction they otherwise would have avoided. To the contrary, they are adamant that they would never have agreed to any transaction. (Dkt. 60, 2d Am. Compl. ¶¶ 49-50.) As the district court in *Reid v. Harvey Motorcycle and Camper* explained: "[Plaintiff] must demonstrate that he entered into a transaction in reliance on [Defendant's] fraudulent statements and suffered damages as a result of his reliance. Since [Plaintiff] did not enter into a transaction with [Defendant] in reliance on [Defendant's] fraudulent statements" the Plaintiff cannot show reliance

or damages. No. 05 C 5375, 2007 WL 4277435, at *6 (N.D. Ill. Nov. 30, 2007). Appellants cannot show reliance because they refused the offers made to them, and affirmatively alleged that they would never have entered into the proposed settlement offers.

Since Appellants never entered into any agreement in reliance on anything Keldermans or McGinley said, they creatively argue two actions taken in reliance on Keldermans' and McGinley's statements: (1) they disclosed "their litigation and settlement strategies," and (2) they "refrain[ed] from investigating, and interfering with and opposing FPD Board approval of, FPD's plans." (Appellants' Br. pgs. 36, 40.) The actions that Appellants claim to have taken (or not taken) in reliance on their purported assumption regarding the identity of the purchaser are both conclusory and implausible. Appellants do not describe what information they disclosed or how it was (or could have been) used to their detriment. (Dkt. 60, 2d Am. Compl. ¶¶ 48-51.) Likewise, they do not identify any investigative opportunities that they passed on. On the contrary, the hearing transcript from the foreclosure case attached to the Second Amended Complaint establishes that Appellants continued their efforts to discover the identity of the purchaser even after meeting with Keldermans and McGinley, including through unsuccessful demands for that information made at a March 14, 2013 hearing. (Dkt. 60-2, Exh. 17, Tr. pgs. 5-9, 15-19.)

The assertion that Appellants disclosed any detrimental information is implausible, particularly given the allegation that "there were certain neighbors

with whom Plaintiffs would not be willing to negotiate" and the fact that they knew Keldermans to be representing an adverse party.  (Dkt. 60, 2d Am. Compl. ¶ 60.) Considering Keldermans' and McGinley's refusal to provide the identity of the loan purchaser, it was not reasonable to draw conclusions about that party's identity and then take or refrain from taking action based on assumptions.

Likewise, the supposition that Appellants could have uncovered the Forest Preserve District as the laon purchaser and successfully prevented it from purchasing the property is unreasonable speculation.  *See State Sec. Ins. Co.*, 258 Ill.App.3d at 592 ("[w]e have consistently and emphatically held that plaintiffs' injuries in fraud actions must directly and proximately result from defendants' misrepresentations and cannot be assessed upon mere speculation or hypothetical assumptions.").  Appellants simply had no right to learn of the transaction; the note expressly stated that it could be unilaterally assigned without notice or consent. (Dkt. 63-1, pg. 7, Note § 8.9.)  Moreover, because *Baker* conclusively rejected Appellants' legal assertion that the Forest Preserve District's efforts to keep its acquisition of the property confidential violated the Open Meetings law (*see* Dkt. 40, Opinion & Order, pgs. 7, 11-12 & n.6), it is implausible that Appellants could have: (a) learned when the board planned to meet (in executive session) to vote on the purchase of the loan; (b) attended that executive session meeting; and (c) successfully opposed the transaction.  (Dkt. 60, ¶ 50, n.14.)  Appellants did not plausibly show that Keldermans or McGinley impacted Appellants' ability to learn

the identity of the loan purchaser or that they detrimentally relied on the alleged misstatements.

    c.    <u>No damages were proximately caused by the non-disclosure.</u>

Damages from fraud must "be a proximate, and not remote, consequence of the fraud" and cannot "be predicated on mere speculation." *See Shah v. Chi. Title & Trust Co.*, 119 Ill.App.3d 658, 661-62 (1st Dist. 1983). Appellants identify their fraud damages as the loss of the property in foreclosure. But they do not (and cannot) plausibly connect this loss with any statements or non-disclosure regarding the identity of the loan purchaser. The unfavorable foreclosure judgment against Appellants did not flow from those purported misstatements or the loan assignment they hoped to thwart; it resulted from their failure to pay the loan years earlier. *See Rogalla v. Christie Clinic, P.C.*, 341 Ill.App.3d 410, 421 (4th Dist. 2003) (finding damages did not arise from the alleged fraud because plaintiff did not make "any payments to Christie Clinic as a result of the alleged misrepresentations or omissions."). The foreclosure process was started years before the Forest Preserve District acquired the loan, as a result of Appellants' failure to pay the loan. Appellants suffered no damage because they could not reasonably expect to keep both the property and the $14,500,000 they borrowed. *See Shah*, 119 Ill.App.3d at 661-62 ("in no event were the plaintiffs entitled to both possess their condominium and retain control over the money held by the escrow agent"). As the district court succinctly stated, Appellants' "alleged damages arise from their own actions in

failing to pay their mortgage and not from the alleged concealment of the fact that the FPD was purchasing the mortgage." (A-15.)

Appellants attempt to connect the note purchase to their alleged injury by contending that, but for the alleged fraud, they could have thwarted the Forest Preserve District's acquisition of the property and negotiated a settlement with BMO Harris Bank. This theory is both speculative and contrary to the documentation attached to the complaint. Appellants, past due on their $14.5 million mortgage and facing a total judgment (with interest and costs) in excess of $20 million, had no ability to control whether (or to whom) BMO Harris Bank sold the loan. Moreover, Appellants' contention – that they could have threatened the Forest Preserve District and BMO Harris Bank and intimidated them into backing out of the sale and settling – is so speculative that it cannot support damages on a fraud claim. *See State Sec. Ins. Co.*, 258 Ill.App.3d at 592 ("[w]e have consistently and emphatically held that plaintiffs' injuries in fraud actions must directly and proximately result from defendants' misrepresentations and cannot be assessed upon mere speculation or hypothetical assumptions."); *Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level."). The transcript attached to the complaint shows that Appellants were not in settlement discussions with BMO Harris Bank; rather, the bank declined to negotiate because Appellants refused to disclose information relating to their financial wherewithal. (Dkt. 60-2, pgs. 44-45.) Appellants did not sufficiently plead damages proximately caused by the alleged fraud.

3.   **The Conspiracy & Aiding & Abetting Claims Were Properly Dismissed.**

Appellants asserted claims against the United States, Bayview, McGinley, McGinley Partners, Keldermans, and BMO Harris Bank for conspiring and aiding and abetting the Forest Preserve District's alleged Fifth Amendment taking.  (Dkt. 60, 2d Am. Compl. ¶¶ 40-46.)  Appellants also asserted claims against Bayview, McGinley, McGinley Partners, BMO Harris Bank, and the Forest Preserve District for conspiring and aiding and abetting Keldermans' alleged fraud.  (*Id*. ¶¶ 54-58.)  Conspiracy and aiding and abetting are derivative claims that depend on another cause of action for their existence.  When the district court dismissed the underlying fraud and taking claims, it correctly concluded that the conspiracy and aiding and abetting claims necessarily failed as well.  (A-15-16); *see Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989).

Even if the underlying fraud claims could survive, the conspiracy claims should be dismissed because Appellants cannot plausibly assert that any of the Appellees engaged in an overtly tortious or unlawful act after *Baker* established that the Forest Preserve District's conduct was lawful.  Conspiracy requires at least one of the parties to commit "some act in furtherance of the agreement, which is itself a tort." *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 63 (1994).  The predicate for Appellants' claims is the theory that the Forest Preserve District's acquisition of the loan was unlawful.  (Dkt. 60, 2d Am. Compl. ¶ 42.)  *Baker* conclusively established that nothing unlawful or tortious occurred.  *City of Chi. v. Fieldcrest Dairies, Inc.*, 316 U.S. 168, 171-72 (1942) ("Illinois has the final say as to the meaning of the

ordinance in question.  It also has the final word on the alleged conflict between the

ordinance and the state Act.").  Moreover, simply having ulterior motives is not an

independently tortious act upon which conspiracy can be predicated.  *Adcock*, 164

Ill.2d at 63 (explaining that merely agreeing "to commit a wrongful act is not a tort,

even if it might be a crime").

The aiding and abetting of the alleged taking was also properly resolved

against Appellants because takings are lawful, so there is no unlawful act that can

serve as the predicate act.  In addition, Appellants cannot assert a taking claim

against private parties because, as this Court explained in *United States v.*

*Merchants Matrix Cut Syndicate*, a plaintiff seeking compensation for a taking must

look to the sovereign.  219 F.2d 90, 97 (7th Cir. 1955) ("[g]overnmental taking of

private property for public use requires payment of just compensation to Merchants,

Intertype and ordinarily to Advertising, but these three tenants cannot improve on

the amount of compensation by taking damages from their landlord.").

## CONCLUSION

Disappointed with the results of state court foreclosure proceedings,

Appellants filed their first action in federal court seeking to enjoin and stop the

state court process.  After the district court refused, Appellants filed this action

asserting conspiracy and fraud.  After that complaint was dismissed, Appellants

amended and asserted that a taking had occurred.  That theory, however, was

already rejected in a separate state court proceeding.  Appellants state no viable

claims and the district court's decision dismissing the claims should be affirmed.

**FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS**,

By:/s/ Christopher Carmichael
      One of its Attorneys

Christopher W. Carmichael
Maureen Browne Schoaf
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th Floor
Chicago, Illinois 60603
Tel:  (312) 263-3600
Fax:  (312) 578-6666
christopher.carmichael@hklaw.com
maureen.schoaf@hklaw.com

**BMO HARRIS BANK N.A.**,

By:/s/ David T.B. Audley
      One of its Attorneys

David T.B. Audley
Bryan E. Jacobson
CHAPMAN & CUTLER LLP
111 West Monroe Street
Chicago, IL 60603
Tel:  (312) 845-3000
Fax:  (312) 701-2361
audley@chapman.com
bjacob@chapman.com

**BAYVIEW LOAN SERVICING, LLC**,

By:/s/ Michael Weik
      One of its Attorneys

Craig C. Smith
Michael J. Weik
SMITH & WEIK, LLC
1011 Lake Street, Ste. 412
Oak Park, IL 60301
Tel:  (708) 386-9540
Fax:  (708) 386-7214
csmith@smithweiklaw.com
mweik@smithweiklaw.com

**FRANCIS L. KELDERMANS**,

By:/s/ Daniel Feeney_____
     One of his Attorneys

Daniel M. Feeney
Brian J. Kerwin
MILLER SHAKMAN & BEEM LLP
180 N. LaSalle Street, Suite 3600
Chicago, Illinois 60601
Tel:  (312) 263-3700
Fax:  (312) 263-3270
dfeeney@millershakman.com
bkerwin@millershakman.com

**MCGINLEY PARTNERS, LLC &
ROBERT R. MCGINLEY**,

By:/s/ Joseph Messer_____
     One of his Attorneys

Joseph Messer
Katherine Olson
MESSER STRICKLER, LTD.
225 W. Washington St., Suite 575
Chicago, Illinois 60606
Tel:  312-334-3440
Fax: 312-334-3472
jmesser@messerstrickler.com
kolson@messerstrickler.com

## **FRAP 32 and CIRCUIT RULE 32 CERTIFICATION**

     The undersigned hereby certifies that the Defendants-Appellees' principal brief complies with Fed. R. App. P. 32(a)(7)(B), (f) because:  the brief contains 8,864 words, including footnotes (as determined by the word count feature on Microsoft Word), and the type-face is Century Schoolbook, 12 points or larger in the body of the brief and 11 points or larger in footnotes, as required by Circuit Rule 32(b).

  s/Christopher Carmichael  
Counsel for Defendant-Appellee
Forest Preserve District of Cook County

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on **May 15, 2017**, a copy of foregoing **Brief of Defendants-Appellees Forest Preserve District of Cook County, BMO Harris Bank, N.A., Bayview Loan Servicing, LLC, Francis Keldermans, McGinley Partners, LLC and Robert R. McGinley** was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s/Christopher Carmichael</u>

#50341077_v14