No. 16-3131

# In the
# United States Court of Appeals
## for the Seventh Circuit

———————

MERYL SQUIRES-CANNON, et al.,

*Plaintiffs-Appellants,*

v.

FOREST PRESERVE DISTRICT OF COOK COUNTY,
ILLINOIS, et al.,

*Defendants-Appellees.*

———————————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:14-cv-05611.
The Honorable **Sara L. Ellis**, Judge Presiding.

———————

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS
## MERYL SQUIRES-CANNON, RICHARD KIRK CANNON,
## ROYALTY PROPERTIES, LLC and CANNON SQUIRES PROPERTIES, LLC

———————

Richard Kirk Cannon
LAW OFFICES OF CANNON & ASSOCIATES
117 South Cook Street, #361
Barrington, Illinois 60010
(847) 381-1600

*Attorneys for Plaintiffs-Appellants
Meryl Squires-Cannon, Richard Kirk Cannon,
Royalty Properties, LLC, and
Cannon-Squires Properties, LLC*

## Table of Contents

Page

Table of Contents ……………………………………………………………………... i

Table of Authorities …………………………………………………………………... ii

I.   Takings and Related Conspiracy, Aiding and Abetting, Claims ………………………… 1

   A.  Physical Takings Claims (Count One) ……………………………………………….. 1

      (1) The *Baker* Taxpayer Suit Is Not Outcome Determinative Herein ………………….... 4

   B.  Regulatory Takings Claims (Count Two) ……………………………………………… 7

   C.  Conspiracy, Aiding & Abetting, For Takings (Count Three) ………………………….. 8

      (1) Count Three Does Not Allege a "Constitutional tort against U.S." ……………….... 8

II.  Fraud and Related Conspiracy Aiding and Abetting, Claims ………………………………… 9

   A.  Fraud by Keldermans and FPD (Count Four) ………………………………………… 9

      (1) Defendant made a false statement or omission of material fact …………………….. 9

      (2) Defendant had knowledge or belief statement was false or ………………………... 11

      (3) Defendant intended to induce Plaintiff to act or refrain from acting ………………. 12

      (4) Plaintiffs acted or refrained from acting in reliance on statement or ………………. 12

      (5) Damage to Plaintiffs resulting from such reliance …………………………………. 14

   B.  Conspiracy, Aid & Abetting, Keldermans Fraud (Count Five) …………………………16

   C.  Fraud By McGinley, Partners and FPD (Count Six) ……………………………………16

III. Conclusion ……………………………………………………………………………. 17

**Table of Authorities**

**Cases**                                                                                                                    Page

*A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142 (Fed. Cir. 2014) ………………………………... 3

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1959, 173 L.Ed.2d 868 (2009) ………….14, 15

*Baker v. Forest Pres. Dist. of Cook County*, 33 N.E.3d 745, 393 Ill. Dec. 1 (2015) ……………… 3, 5, 6

*Baker v. Forest Pres. Dist. of Cook County*, Cook Cty Cir. Ct. 2013CH20057, Hearing (10-21-13) ……. 6

*Baker v. Forest Pres. Dist. of Cook County*, Cook Cty Cir. Ct. 2013CH20057, Hearing (04-23-14) … 5, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) …………………………14

*Chicago, B.&Q. R. Co. v. City of  Chicago,* 166 U.S. 226 (1897) ………………………………….. 6

*FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) …………………………. 8

*Gibson v. City of* Chicago, 910 F.2d 1510 (7th Cir. 1990) …………………………………………14

*Glencoe v. Metro. Sanitary Dist.*, 23 Ill. App. 3d 868, 320 N.E.2d 524 (1st Dist. 1974) ……………… 10

*Hughes Communications Galaxy, Inc. v. U.S.,* 271 F.3d 1060 (Fed. Cir. 2001) ………………............. 3

*Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) …………………. 14

*Reid v. Harvey Motorcycle &* Camper, 2007 WL 4277435 (N.D.Ill. 2007) ….…………..12, 13

*Russ v. United States,* 62 F.3d 201 (7th Cir. 1995) ………………………………………………. 8

*St. Christopher Assocs., L.P. v. U.S.*, 511 F.3d 1376, 1385 (Fed. Cir. 2008) ……………………………... 3

*Warren v. Gov't Nat'l Mortg. Ass'n*, 611 F.2d 1229, 1234 (8th Cir. 1980) ………………………………. 3

*Weidner v. Karlin*, 402 Ill.App.3d 1084, 932 N.E.2d 602 (3d Dist. 2010) ………………………. 9

**Constitutions**

Illinois Constitution, Article VII, §8 ……………………………………………………………… 10

United States Constitution, Fifth and Fourteenth Amendments ………………………………….. 4

**Statutes**

70 ILCS 810/1 ………………………………………………………………………………...… 10

70 ILCS 810/8 ……………………………………………………………………………………. 5

735 ILCS 30/10-5-5 ……………………………………………………………………………… 7

**Rules**

Rule 12(b)(6), Fed.R.Civ.P. ……………………………………………………………………2, 14

Rule 71.1(h)(1)(A), Fed.R.Civ.P. ………………………………………………………………... 7

## I.   TAKINGS AND RELATED CONSPIRACY, AIDING AND ABETTING, CLAIMS

### A.  PHYSICAL TAKINGS CLAIMS (Count One)

FPD's entering Plaintiffs' Estate and erecting thereon (at its entrances) large metal signs indicating it was already owned by FPD, marking hiking trails with more signs throughout, and inviting the public to enter and use Plaintiffs' privately-owned Estate was, by itself, a physical "taking" that should have precluded dismissal of Plaintiffs' taking claim. The District Court ***entirely missed*** that the allegation *was* made in the SAC [R60p7¶30] and ignored that the facts alleged support a physical taking claim, instead turning its attention to *regulatory* taking:

> "Although these allegations are not included in the second amended complaint [contra SAC, R60p7¶30] … But even accepting that the FPD erected signs on the property at some point prior to taking title, as explained below, this does not change the Court's analysis of whether the ordinance at issue amounts to a regulatory taking." [R81p8fn7]

For that reason alone, dismissal of Plaintiffs' taking claim should be reversed.

Next, Defendants' own *Statement of Issues* belies their alleged defense to the remaining physical takings claim, framing the issue of the FPD's government taking on whether its actions (in support of its note purchase and sham foreclosure) were "just as a private party would" act. [Doc.29p2] The clear answer is an emphatic "***no***". As just one example, no private party could enact an Ordinance telling prospective bidders FPD would condemn if not successful at auction.

Despite Defendants' arguments (and the *Baker* ruling) that FPD's actions were "all one continuous process of acquiring the Estate by purchase", the District Court improperly strained to *separately* segment FPD's coordinated simultaneous actions to improperly make erroneous factual findings (contrary to Plaintiffs' allegations): (a) FPD acted solely in a proprietary capacity "throughout the process" of purchasing the Note and foreclosing on the mortgage [R81p10]; and (b) FPD's Ordinance was merely a "prospective enactment" (interpreted in a vacuum while ignoring the already-scheduled foreclosure sale) that would apply only "to the extent the FPD acquired [the Estate] in the future". [R81p8¶2] The District Court did so by

1

**rejecting Plaintiffs' allegations** of the combined synergistic effect of *both* (note purchase and foreclosure efforts, combined with <u>simultaneous coordinated enactment</u> of the Ordinance and already-scheduled foreclosure sale), along with FPD's multiple further related *government* acts. Those further prior-to-foreclosure-sale (and *long* before mortgagee-in-possession)[1] *government* acts include: erecting large metal existing-ownership signs at Estate entrances; using government contacts to publicize FPD claim to existing ownership; encouraging public entry on and use of the Estate; touring Estate daily with marked <u>FPD Police</u> vehicles highly visible by adjacent busy road; public disclosure of Ordinance *requiring* FPD to obtain title by condemnation if not a successful purchaser[2]. Plaintiffs alleged these *governmental* acts in the SAC [R60pp6-10¶¶27-38], Opposition [R73p6], Rule 59 Motion [R83pp4-9§A], and Appeal Brief.[3] [DOC17p25-34]

Given the already-scheduled foreclosure auction (just two weeks later), public disclosure of an Ordinance requiring acquisition by condemnation had a chilling effect on competitive bids. Combined with other coordinated *government* acts (noted above) just prior to foreclosure sale, FPD was <u>*not*</u> acting solely in its private capacity "just as a private party would". At very least, whether FPD acted solely in its private capacity "throughout the process" was fact issue refuted by Plaintiffs' allegations that precluded dismissal in the context of a Rule 12(b)(6) motion.

---

[1] **Defendants blatantly falsify the record** by claiming these acts occurred after possession was granted to FPD. In reality, they occurred <u>prior to</u> the October 18, 2013 foreclosure sale and long <u>before</u> Mortgagee-In-Possession was granted to FPD as of November 18, 2013. [See: R63-1p97¶3] When FPD's acts occurred, *Plaintiffs* had exclusive possession under a Court-approved agreement with the Receiver.

[2] **Defendants falsify the record** stating "… nowhere does the ordinance actually authorize any eminent domain action …" [Doc.29p20¶1] The Ordinance expressly provides "… it is necessary and desirable for the District to own and **it *shall* acquire property hereafter described**…"]) [R60-1p25§1], along with <u>authority to condemn</u> "…**it being the intention** of said Board of Commissioners or the District **to** … negotiate for purchases, **condemn or otherwise acquire** … the several parcels of land …" [R60-1p29§3]

[3] The District Court expressly chose to ignore those *governmental acts* in the context of its wrongful factual finding of "proprietary capacity", stating "… the Court will not address Plaintiff's theories that the FPD improperly manipulated the foreclosure process." [R81p11fn.8] It was reversible error for the District Court to reject Plaintiffs' factual allegations in favor of making its own contrary factual finding.

The District Court cited cases which suggest government enforcement of a note through foreclosure is merely a proprietary act, while ignoring those cases' implicit requirement that the borrower <u>agreed by its contract directly with the government entity</u> to allow potential foreclosure by that entity,[4] and choosing to "not address" FPD's *government interference and prevention of* a fair foreclosure auction. [R81p11fn8] Waiver of Constitutional protections against government coercive takings without just compensation cannot be based on unintended application of contractual provisions <u>entered into with private parties</u>, nor should government be allowed to do an "end run" around Constitutional requirements of providing just compensation to property owners (determined by jury) by the subterfuge of purchasing a note and claiming proprietary status ***while using its sovereign powers to interfere*** with a fair and neutral public foreclosure process.[5] To hold otherwise would open the floodgates of government *avoiding* Eminent Domain requirements of just compensation to property owners by instead using public funds to acquire private mortgages and coercively taking their property by foreclosure for the slightest default.[6]

---

[4] District Court cited cases based on <u>contracts entered into directly with the government</u>. [*St. Christopher Assocs., L.P. v. U.S.*, 511 F.3d 1376, 1385 (Fed. Cir. 2008) ("… **HUD entered into the … Agreement with St. Christopher** and, therefore, was acting in its commercial capacity …") (emphasis added); *Warren v. Gov't Nat'l Mortg. Ass'n*, 611 F.2d 1229, 1234 (8th Cir. 1980) (**"[a]s a party to the contract** … GNMA had a right to resort to **its** <u>contractual remedies</u> just as a purely private entity had." (emphasis added); *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1156 (Fed. Cir. 2014) ("Proprietary government action **typically involves bargaining with private actors** for the provision or procurement of goods and services; the action is deemed proprietary even though the government may enter into the contractual relationship in pursuit of a larger governmental objective."). *See also*: *Hughes Communications Galaxy, Inc. v. U.S.*, 271 F.3d 1060, 1070 (Fed. Cir. 2001) ("Taking claims rarely arise under **government contracts** because the Government acts in its commercial or proprietary capacity in entering contracts...").

[5] FPD actions ***<u>in its sovereign capacity</u>***, shortly before foreclosure auction, prevented any competing bids (e.g. enacting public Ordinance that FPD "shall" acquire the Estate, threatening condemnation if not the purchaser, publicizing claims to existing ownership, erecting signs indicating existing ownership, inviting public to access and use Estate as forest preserve, overtly touring Estate with "FPD Police" vehicles, etc.) **No private individual had such powers to act.**

[6] The Illinois Appellate Court in Baker essentially recognized and condoned the practice (of acquiring private notes and foreclosing to *avoid* paying just compensation to the property owners) when it stated: "[the process of acquiring the land by eminent domain] could take much longer, possibly resulting in a ***higher price*** for the land." *Baker v. Forest Pres. Dist. of Cook County*, 33 N.E.3d 745, 755 ¶46, 2015 IL App (1st) 141157, 393 Ill. Dec. 1 (2015)."

Plaintiffs never entered any contracts with FPD that would expose them to foreclosure under *non-financial* motivations of that local unit of government or waive entitlement to just compensation guaranteed by the Fifth and Fourteenth Amendments. Plaintiffs expected that the bank with which they contracted would be motivated by recovery of funds lent and negotiate resolutions of any disputes on that basis. Plaintiffs also understood that, ***if*** government did seek to coercively take title, it would comply with Eminent Domain to provide just compensation *to Plaintiffs as the owners*. What Plaintiffs did *<u>not</u>* anticipate or agree to was government's skirting requirements of Eminent Domain by using public funds to buy their Note, seek a judgment and foreclosure order, and use *Cook County government* political powers to unfairly manipulate the foreclosure process[7] and preclude other bidders at the foreclosure auction – thereby assuring artificially-reduced sale price millions of dollars below admitted (by FPD) value and, instead of providing just compensation *to Plaintiffs*, a multi-million-dollar deficiency judgment *against* Plaintiffs. FPD did far more than act "just as a private party would". Details, of *government sovereign* acts, were alleged. [R60pp6-10¶¶27-38] District Court committed reversible error by not interpreting those allegations in a light most favorable to Plaintiffs and, instead, making fact findings of fact that FPD acted solely in its proprietary capacity "throughout the process".

### (1) The *Baker* Taxpayer Suit Is Not Outcome Determinative Herein

The sole issue asserted by taxpayers in *Baker* was <u>whether FPD was authorized by statute</u> to use public taxpayer funds to purchase a private note, asking the court to recover those public funds and enjoin further such acts. *FPD* argued its note purchase was part of one continuous "purchase" of land (authorized by statute) where title was later obtained in a foreclosure sale. Taxpayers took a <u>totally different position</u> that FPD's purchasing a note and mortgage was itself

---

[7] The foreclosure court struck all affirmative defenses and granted summary judgment just two months after FPD appeared, and thereafter dismissed all counterclaims despite FPD's failure to answer. The Illinois Appellate Court has *reversed* each of those rulings.

*ultra vires* since its Enablement Act only authorized FPD to acquire <u>land</u> "by **gift, grant, legacy,**

**purchase or condemnation**" [70 ILCS 810/8] and that FPD by its <u>note</u> purchase did not receive

title to land and was not assured of ever obtaining title (i.e. its note purchase was <u>not</u> authorized

purchase of <u>land</u>). While condemnation was a <u>contrasted alternative means</u> of acquiring land

under the statute, no one ever suggested FPD had taken title by condemnation, or that it had

complied with Eminent Domain.[8] The *Baker* court merely adopted FPD's arguments and ruled

its acts (purchasing the note and being the winning bidder at foreclosure sale) were a "purchase"

of land ***within its statutory authority***[9] (instead of the statutory "alternative" of condemnation).[10]

      Since the only issue raised by the taxpayers and decided in *Baker* was <u>whether FPD had</u>

<u>statutory authority</u> to use public taxpayer funds to purchase a private note, there was no basis for

the taxpayers to claim that FPD's *subsequent litigation* (<u>after</u> the Note was already purchased) to

obtain judgment on the Note, seek a foreclosure order, take actions to preclude other bidders,

enact and publicize Ordinance requiring condemnation, post signs indicating existing ownership,

and to then bid at the foreclosure sale, was an unconstitutional taking of *Plaintiffs' residential*

*property*. **Different facts and evidence would have been required**, which are being asserted

herein. Despite Defendants' argument, *res judicata* of Plaintiffs' takings claims does not apply.

---

[8] Defendants' contrary representations [Doc29p15¶3] are disproven by their own record citations. Further, Defendants <u>inconsistently</u> state plaintiffs in *Baker* argued that FPD "engaged in eminent domain to acquire the property", and then that FPD "improperly avoided the eminent domain process by foreclosing on the mortgage." [*Id*.] Judge Allen noted: "**This is not a condemnation case. I'm not suggesting that it is, but it has the same net result in many ways**." [*Baker v FPD*, Cook Cty Cir.Ct. 2013CH20057, Hearing(4-23-14), p23:13-15] "They wanted to get the property in fee simple. They didn't get it with hand-off of the money and the deed, but I think in the end, fee simple is fee simple, which is what is logically going to be the end result … I think that this is within the purview of the legislative intent… We got the statute… And **there's just an interpretation of the statute**… that's the way I interpret it. So I'm granting [FPD's] motion." [p53:15-54:10]

[9] "…we hold that FPD was ***within its statutory authority***…". *Baker, supra* at 756 ¶49." (emphasis added)

[10] "The legislature was presumably aware of the powers of eminent domain in drafting and then amending both the District Act… multiple times… Even the earliest version of the enabling District Act did not call for eminent domain to be the exclusive procedure for acquiring property… Condemnation is simply one of the procedures - along with "gift, grant, legacy, [or] purchase" for FPD to acquire land." *Id.* at 755 ¶4.5.

As Defendants noted "the district court did not directly address Appellees' *res judicata* arguments…". [Doc29p14] That is for good reason. The *Baker* court had already analyzed the issue (in context of consolidation). <u>Contrasting</u> the underlying evidentiary and factual basis and relief sought by the taxpayers, from that in the foreclosure suit, the *Baker* court expressly ruled "the foreclosure action and the taxpayer suit were not of the same nature" and that the taxpayers were not seeking to obtain personal gain or to defend their property.[11] The same distinction applies herein, between the public taxpayer suit over <u>statutory authority to use public funds</u>, and the action alleged by Plaintiffs for Unconstitutional taking of Plaintiffs' specific property.

While Plaintiffs believe the *Baker* court ruled incorrectly that the Enablement Act was not violated by FPD's <u>procedure</u> of purchasing a note and coercive taking through a sham foreclosure, that alleged statutory compliance does not mean FPD's actions met requirements of just compensation mandated by the Takings Clause. As stated by the U.S. Supreme Court:

> "[A state] legislature may prescribe a form of <u>procedure</u> to be observed in the taking of private property for public use, but it is not due process of law if provision is not made for ***just compensation to the owners of the property***." *Chicago, B.&Q. R. Co. v. City of Chicago,* 166 U.S. 226, 236 (1897). (emphasis added) [See also: Doc.17p27]

No such just compensation provision is made for coercive "purchases" in the Enablement Act. Further, the amount of Constitutionally-mandated just compensation is to be determined by a

---

[11] On FPD's unsuccessful motion to consolidate (foreclosure and taxpayer cases), taxpayers acknowledged: "Counts 3 and 4 have nothing to do with [the Estate]. Counts 1 and 2 only mention the transaction in the sense that it's an expenditure of public funds." [*Baker* Hearing before Judge Jacobius, Cook Co. Cir. Ct. No. 13CH20057 (Oct. 21, 2013) at 13:11-14] **The *Baker* Appellate court also stated**:

> "Similar to the motion to transfer related cases that was filed in this case, a motion to consolidate … asks whether the two cases are of the " 'same nature, arise from the same act or event, involve the same or like issues, and depend largely upon the same evidence.' "[cite] Here, **the foreclosure action and the taxpayer suit were not of the same nature**. In the foreclosure action, FPD submitted documentary proof that it owned the mortgage and note. The taxpayer suit, on the other hand, challenged FPD's ownership of the mortgage and note based on the [Enablement Act], not based on the documentary proof. The taxpayer suit sought to benefit the taxpayers who are responsible for replenishing the tax reserves of Cook County. … Plaintiffs bring this action on behalf of all taxpayers. … **Plaintiffs do not seek a personal gain in this action**. … <u>In contrast</u>, in the foreclosure action, plaintiffs and their affiliated corporate entities sought to defend their property against foreclosure for their own benefit and the benefit of their companies." *Baker, supra* at 750-51 ¶32. (citations omitted; emphasis added)

6

jury. Fed.R.Civ.P. 71.1(h)(1)(A) ("compensation must be determined . . . by a jury when a party demands one"); 735 ILCS 30/10-5-5. A jury was demanded in this case and in the foreclosure suit. It would be contrary to laws of Eminent Domain, and mandatory-compensation requirements of the Takings Clause, for a local enablement statute to defeat those Constitutional protections and permit a government entity to coercively take private property without ensuring just compensation _to the owners_ for fair market value as determined by a jury. Plaintiffs adequately alleged their takings claims, and it was reversible error for the District Court to dismiss same.

## B. <u>REGULATORY TAKINGS CLAIMS</u> (Count Two)

The Ordinance enacted by FPD just two weeks before the scheduled foreclosure auction went much farther than being just a "prospective enactment" and "to the extent the FPD acquired Horizon Farm in the future". [R81p8¶2] Ordinance interpretation is **_fact_**-dependent, requiring analysis of FPD's overall scheme and underlying circumstances. [_See_ Appellate Brief, Doc17p22] Instead, the District Court interpreted it in a vacuum, without accepting as true Plaintiffs' related factual allegations, essentially discounting them with "… the Court need not accept Plaintiffs' allegations of the effects of the ordinance because the effect of the ordinance is a question of law."

**District Court was required to interpret the Ordinance <u>in context</u> of the factual circumstances** (FPD-controlled auction; erected signs; publicity of claimed existing ownership; investment-based expectations) **combined with FPD's overall scheme** (knowing the owners did not want Estate turned into forest preserve, <u>coercively take property</u> <u>**without just compensation**</u> by: secretly acquiring note option; misidentifying Purchaser to prevent Plaintiffs' interference; using tax funds to obtain judgment and foreclosure order; precluding other bids by enacting _and publicizing_ Ordinance, just two weeks before scheduled auction, that FPD _shall_ acquire Estate by condemnation if not successful bidder). The District Court was required to accept as true each of those factual allegations (distinguishing cited cases) _and interpret them in a light most favorable_

*to Plaintiffs* when interpreting the Ordinance. It was reversible error to "not accept" those

allegations and, instead, dismiss the regulatory takings claim.

### C. <u>CONSPIRACY, AIDING & ABETTING, FOR TAKINGS</u> (Count Three)

Dismissal of the takings claims against FPD was reversible error. Since dismissal of the

related conspiracy and aiding and abetting claims was dependent upon a finding that "no taking

occurred" [A-1p12¶1], it was error to dismiss the related conspiracy and aiding and abetting

claims individually asserted in Count Three. [R60p20¶¶53-58]

### (1) <u>Count Three Does Not Allege a "Constitutional tort against the U.S."</u>

U.S. asks <u>*this*</u> Court[12] to dismiss claims against it **for conspiracy, and aiding and**

**abetting,** acts *committed by FPD*, arguing the Federal Tort Claims Act "did not waive sovereign

immunity for suits against the United States for constitutional torts." [Doc26pp2-3] However, the

**<u>state-law</u>** claims alleged against the U.S.[13] are not "Constitutional torts claims against the U.S.".

Defendant's own cited authorities indicate the distinction, and provide support that the state-law

claims asserted against U.S. herein are cognizable under the FTCA.

> "Section 1346(b) grants the federal district courts jurisdiction over … claims that are:
> "[1] against the United States, [2] for money damages, ... [3] for injury or loss of property,
> or personal injury or death [4] caused by the negligent or wrongful act or omission of any
> employee of the Government [5] while acting within the scope of his office or employment,
> [6] under circumstances where the United States, if a private person, would be liable to the
> claimant in accordance with the law of the place where the act or omission occurred." 28
> U.S.C. § 1346(b)." *FDIC v. Meyer,* 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308
> (1994). See also: *Russ v. United States,* 62 F.3d 201, 204 (7th Cir. 1995).

Plaintiffs met those requirements by alleging:

---

[12] District Court did not dismiss state-law claims against U.S. on the basis now argued, so Plaintiffs did not address it in their Appeal Brief. That does not forfeit or waive their right to respond to U.S.' legal argument.

[13] The agreements between Harris and FPD <u>required FDIC approval</u> prior to sale of the Note. [R60-1 pp9¶8, 45¶8.2, 56, 59] **<u>Facts were alleged</u>** [R60 p6¶24, p11¶¶39-41] that **FDIC had "meetings with Harris and Bayview" to "discuss, agree to [i.e. conspire] and approve" FPD's plan and related contracts (e.g. the PNA which misidentifies Purchaser) for "contacting the Cannons… with offers to encourage them to transfer the deed [to FPD]"** [¶41] (or failing that, coercively take Estate without paying just compensation), and that FDIC otherwise conspired with and aided and abetted FPD (e.g. "*secretly* approved … a closed-door 'executive session' deal with the FPD" [¶24]), in its scheme to acquire the Estate without just compensation to its owners. These allegations must be accepted as true, thus precluding dismissal of the claim against U.S.

[1] claims against the U.S. [2] for money damages [3] for injury to and loss of their Estate [4] caused by wrongful acts of FDIC employees conspiring with FPD [5] approving secret agreements with Harris and aiding and abetting FPD's scheme to purchase the Note while hiding FPD's identity to prevent Plaintiffs' timely opposing required government approvals [6] under the same circumstances where the other named Defendants herein are liable under Illinois law (conspiracy, aiding and abetting, *torts committed by others*). [R60p11-17¶39-41]

Plaintiffs' asserted state-law claims against the U.S., for conspiracy and aiding and abetting, are cognizable under the FTCA and do not constitute "Constitutional claims against the U.S."

## II.   FRAUD AND RELATED CONSPIRACY, AIDING AND ABETTING, CLAIMS

Independent of this Court's rulings on dismissal of federal Takings-related claims (Counts One, Two and Three), supplemental jurisdiction was exercised by the District Court over state law claims of fraud and related conspiracy and aiding and abetting claims (Counts Four, Five and Six), causing Plaintiffs to seek reversal of the District Court's dismissal thereof.

### D.   FRAUD BY KELDERMANS AND FPD (Count Four)

The District Court strained to make erroneous *findings of fact* (regarding reliance and damages) contrary to Plaintiffs' allegations. In their Brief [Doc.17p35-40], Appellants established those findings were clearly erroneous in context of a motion to dismiss. To salvage dismissal, Defendants ask this Court to make *other* erroneous fact findings (regarding false statements and concealments) contrary to Plaintiffs' allegations. Those arguments are debunked below. All five required elements of Plaintiffs' fraud claim were adequately alleged. *See*: *Weidner v. Karlin*, 402 Ill.App.3d 1084, 1087, 932 N.E.2d 602, 605 (3d Dist. 2010).

#### (1) Defendant made a false statement or omission of material fact:

The District Court noted Plaintiffs' specific allegations that:

"Keldermans, an attorney, represented to the Cannons that the **Purchaser** was a group of individuals operating as an LLC, identifying that LLC in a pre-negotiation and confidentiality agreement presented to them **at a February 14, 2013 meeting** as 'Horizon Farms Loan Acquisition LLC'." [A1p3¶2, fn2; also: R60p18¶48; R60-2p.18]

In that pre-negotiation and confidentiality agreement ("PNA") attached to the SAC, it states:

"Purchaser represents that it … has entered into a Loan Sale Agreement with BMO Harris … pursuant to which Purchaser has the right, but not the obligation, to purchase the Note and all other rights of BMO Harris under the other Loan Documents." [SAC, R60-2p15¶F]

Those statements by Keldermans were demonstrably and irrefutably *false*. [R60p17¶¶48-49]

Defendants all knew that the entity "Horizon Farms Loan Acquisition LLC" <u>did not exist</u>, and there were no plans or intentions to form such an LLC. Defendants have never refuted this.[14] The party which Defendants stated "has entered into a Loan Sale Agreement with BMO Harris" was not the Purchaser identified as "Horizon Farms Loan Acquisition LLC". It was, instead, the FPD itself without any "LLC" involvement.[15]

Keldermans also knew that FPD, as a "nonhome rule" unit of local government, could not form or own an LLC, since FPD can only exercise those powers *specifically* granted it by the Enablement Act.[16] Nowhere in the statute does it grant FPD power to form or own an LLC or to operate as one. [70 ILCS 810/1, *et seq*.] Thus, contrary to Defendants' misplaced arguments, Keldermans knew that identifying the Purchaser as an LLC was, by itself, deceptively indicating that the Purchaser was *not* the FPD. Even if that were not the case, falsely identifying the Purchaser as the *non-existent* "Horizon Farms Loan Acquisition LLC" was by itself deceptive.

In light of his deceptive conduct and suppression of material facts, Keldermans committed misleading omissions and active concealments by failing to clarify and correctly identify the true Purchaser when specifically asked if it was "a single individual or a group of individuals".

---

[14] Defendants' referring to the <u>non-existent</u> *Horizon Farms Loan Acquisition LLC* as "inchoate" [Doc.29p27] defies credulity and exemplifies Defendants' lack of candor with this Court. If there were any evidence of its existence or actual plans therefor, "inchoate" or otherwise, it would have been presented.

[15] "This Loan Sale Agreement … is made as of this <u>4th day of February</u>, 2013, between BMO Harris Bank… ("Seller") … and the **Forest Preserve District of Cook County, Illinois ("*Buyer*")**." [R60-1p5]

[16] FPD's enabling Act, is titled "Special Districts". 70 ILCS 810/1. As a Special District, FPD is a "nonhome rule" unit of local government. FPD is a creature of statute and has no inherent powers. *See Glencoe v. Metro. Sanitary Dist.*, 23 Ill. App. 3d 868, 870, 320 N.E.2d 524 (1st Dist. 1974) (citing *Ill. Const. Art. VII*, §8 that regulatory agencies are special districts and have no inherent powers. "They are creatures of statute, vested only with those powers specifically conferred upon them by the legislature.").

[R60p18¶48] His statements and omissions, and active concealments, were <u>false statements, and misleading omissions, of material fact</u>.[17] Plaintiffs adequately plead the above.

### (2) <u>Defendant had knowledge or belief statement was false or omission misleading</u>

Defendants *knew* identity of the Purchaser was material to Plaintiffs, and Keldermans misrepresented it to be non-existent "Horizon Farms Loan Acquisition LLC" **purposely in order to deceive Plaintiffs** to believe it was *not* the FPD.[18] Earlier, FPD's agent inquired if Plaintiffs might be willing to transfer their farm to FPD, to which Plaintiffs responded with an emphatic "no". Later, after FPD misidentified the "Purchaser", FPD was deposed and asked why:

> "A My recollection was at the time **we did not want to disclose that we were the interested party**. …
> A I don't remember the specific reasons for that.
> Q How about the general reasons?
> A I don't recall the general reasons other than I believe there were some -- **we heard that perhaps the [Cannons] might be more open to a non-Forest Preserve party to negotiate with to acquire the property**." [SAC, R60-2p33-34 (Adas Depo 66:22-67:5)]

Plaintiffs alleged that Defendants *knew*: Plaintiffs did not want to negotiate with FPD; that misidentification of the Purchaser as "Horizon Farms Loan Acquisition LLC" was false; and that Keldermans' omission and active concealment (failing to clarify and identify the true Purchaser when asked")[19] was misleading. [SAC, R60p18¶¶48-49] Such "underhanded" deceptive conduct by Keldermans,[20] an attorney and officer of the court,[21] should not be condoned or excused.

---

[17] "The identity of this "Purchaser" was material to Plaintiffs in determining whether they might be willing to negotiate a deal with that party, and whether disclosure of their related private information to that party might expose them to further difficulties in their ongoing litigation if no deal was reached." [R60¶48]

[18] Defendants knew Plaintiffs would oppose any efforts to turn the Estate into forest preserve. [R60p18¶49]

[19] Fraudulent concealment does <u>*not*</u> always require a confidential or fiduciary relationship. [R60p18fn13] Keldermans did far more than just "refuse to identify" his client. Once he made his misidentification of the Purchaser (deceptive conduct), **<u>Keldermans had a duty to disclose</u>** the truth. [See: Doc17p36fn17]

[20] Despite Defendants' falsely attributing "pejorative characterizations" to Plaintiffs, it was <u>Judge Allen's own words</u> that concluded Keldermans' deceptive conduct was "... ***underhanded*** …". (emphasis added) [*Baker* Hearing (4-23-14), *supra* at 50:23-51:1]

[21] Richard Cannon, being a patent attorney familiar with the Illinois Rules of Professional Conduct, including its requirement of "truthfulness in statements to others" [Rule 4.1, note 1] and its prohibition against "conduct involving dishonesty, fraud, deceit, or misrepresentation" [Rule 8.4(c)], it was not unreasonable for him to rely upon Keldermans as being truthful and not intentionally misleading.

**(3) <u>Defendant intended to induce Plaintiff to act or refrain from acting</u>:**

Plaintiffs adequately alleged that FPD and Keldermans <u>specifically intended to deceive</u>

<u>Plaintiffs</u> into believing the Purchaser was *not* the FPD, for several *separate and distinct* reasons:

> (a) <u>To induce</u> Plaintiffs to meet with Keldermans so that he could present the "Purchaser's" business offer;[22] [SAC R60p18¶¶48; R60-2pp23,65]

> (b) <u>To induce</u> Plaintiffs to meet with Keldermans, so he could improperly question them about their litigation positions and settlement strategies without disclosing substantial likelihood FPD would be a legal adversary (with political influence and inflexible non-financial motives) in the pending foreclosure suit; [*Id.*]

> (c) <u>To induce</u> Plaintiffs to *rule out* FPD as the Purchaser, to induce Plaintiffs to refrain from (delay) opposing required approvals of its behind-closed-doors plan to use $14M in taxpayer funds to purchase a note already in protracted litigation[23], and until the 60-day limitations statute ran on its violation of the Open Meetings Act, thus making approval a *fait accompli*. [SAC R60p19¶50]

Defendants knew Plaintiffs were aware of FPD's prior interest, and <u>intended to induce them to</u>

<u>rule out FPD as "Purchaser"</u> to cause them to act, and refrain from acting, as stated above.

**(4) <u>Plaintiffs acted or refrained from acting in reliance on statement or omission</u>:**

Reliance was well plead. That Plaintiffs did not enter into the business transaction

proposed by Keldermans does not negate their reliance on his false statements and omissions.

The District Court misread *Reid v. Harvey Motorcycle &* Camper, No. 05 C 5375, 2007 WL

4277435 *6 (N.D.Ill. Nov. 30, 2007) to impose such a requirement. Instead, the court in *Reid*

merely recognized need for *the named plaintiff* to <u>act or refrain from acting in reliance</u> upon

---

[22] Defendants misleadingly call their proposal a settlement offer. "Purchaser" was not a party to the Harris foreclosure suit, and had no obligation to become a party. FPD was seeking a real estate deal with Plaintiffs.

[23] When Plaintiffs eventually learned FPD was the Purchaser, they promptly investigated how to oppose FPD's use of taxpayer funds; but, true to FPD's fraudulent purpose, FPD Board and FDIC had by then *already approved* the Note purchase, and it was *too late* to sue FPD (60 days after FPD's secret meeting) for violating the Open Meetings Act. Once the possibility of Plaintiffs' interference with approvals had passed, on the very next day after FDIC approval, Keldermans withdrew "Purchaser's" offer". [R60-2p25]

defendant's fraudulent statements to his damage.[24] Plaintiffs met that burden, alleging they relied upon Keldermans' false statements and omissions to *rule out* FPD as the Purchaser, which induced them to: (1) meet with him to discuss his client's offer; (2) make disclosures about their litigation and settlement positions; and, (3) refrain from promptly contacting the FPD Board to oppose using taxpayer funds to purchase a private note or enter protracted foreclosure litigation. [R60p18¶¶48-50; R60-2pp23,65]

Defendants argue Plaintiffs' allegations are speculative and implausible, in that Plaintiffs were allegedly no worse off than if they had never been contacted by Keldermans. The argument ignores reality. The meeting was held, his proposal was discussed, and Plaintiffs made numerous disclosures they would not otherwise have made if Keldermans had not misidentified his client. Further, Plaintiffs already had reason to know FPD was interested in acquiring their Estate. Given that the <u>only</u> party which had *previously* contacted Plaintiffs about their Estate had asked if they would be willing to transfer ownership to FPD, it is not just plausible, but highly likely, that **(but for Keldermans' deceptions)** **<u>Plaintiffs would have focused on FPD, and contacted the FPD Board to learn of and oppose FPD's use of taxpayer funds, once the "undisclosed party" sought permission from the foreclosure court to enter onto and inspect the Estate</u>**. However, Keldermans' misidentifying the "Purchaser" as <u>*an LLC*</u> (which FPD could not legally form or own), and his misleading response to direct inquiries of whether the Purchaser was "one individual or a group of individuals" (by stating it was "not just one individual" implying it was

---

[24] "Watson argues that because Reid was not a signatory to any of the contracts, he was not actually or proximally damaged by Watson's deceptive acts. The court agrees. The contract was entered into by Picl and Watson, and Reid was not a party to the allegedly fraudulent contract. Thus, the losses sustained as a result of <u>*Picl's*</u> reliance on Watson's fraudulent statement are Picl's alone. … To award separate damages to Reid**, who has not alleged damages suffered solely by himself and independent of those suffered by Picl**, risks a double penalty against Watson for the same transaction." *Reid, supra* at *5. (emphasis added)

a group of individuals), induced Plaintiffs to *rule out* FPD as the interested "Purchaser" and to believe the undisclosed party seeking to inspect was <u>*not*</u> FPD.

Thus, in reliance upon Keldermans' deceptive acts and omissions, and true to Defendants' purpose, Plaintiffs were induced to refrain from immediately focusing on or contacting the FPD Board – until it was too late. For Defendants to argue Plaintiffs' allegation is "speculative" not only defies logic, but constitutes an attempt to have this Court improperly evaluate merits and likelihood of Plaintiffs' allegations, as the District Court erroneously did.[25]

**(5) <u>Damage to Plaintiffs resulting from such reliance</u>:**

Causation for Plaintiffs' alleged damages is fact dependent. It was reversible error for the District Court to make findings of fact, contrary to Plaintiffs' allegations, that "[Plaintiffs'] damages arise from their own actions in failing to pay their mortgage and not from the alleged concealment of the fact that the FPD was purchasing the mortgage" and that "their claim to have been harmed [based on their reliance on Keldermans' misidentification] fails." [A1p15]

First, the District Court *rejected* Plaintiffs' allegation of damages incurred due to <u>FPD's use of confidential information disclosed by them</u> to Keldermans (and to McGinley) in reliance upon their misidentifications. Further, despite the District Court's apparent misunderstanding, Plaintiffs never alleged Keldermans' fraud caused their mortgage to be in foreclosure. Plaintiffs

---

[25] A Fed.R.Civ.P. 12(B)(6) motion to dismiss challenges the sufficiency of the complaint, not its merits. *Gibson v. City of* Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). See also: *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1959, 173 L.Ed.2d 868 (2009):

> "Twombly does not require a court at the motion-to-dismiss stage to consider whether the factual allegations are probably true. We made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may be. See Twombly, 550 U.S., at 555, 127 S.Ct. 1955 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); Id., at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); see also *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations")."

<u>alleged</u> they would have likely convinced the FPD Board to refrain from approving use of tax funds to buy a Note in protracted foreclosure litigation (and reasons why), which would have freed up Harris to accept <u>Plaintiffs' offer</u> of the same amount accepted from FPD. [R60p20 fn15][26]

While the District Court erroneously stated disbelief in Plaintiffs' factual allegations, noting "BMO could sell the note to anyone without notice or consent" [A1p15], that improperly ignores facts that: (a) the FPD Board had expressed concerns about getting involved in foreclosure litigation when considering whether to approve the Note purchase[27]; (b) Plaintiffs actually offered the identical amount to Harris; [R60p20¶60] (c) Harris responded to Plaintiffs' offer - that another contract prevented it from accepting; [*Id.*] and (d) if not constrained by FPD's option contract, Harris had additional incentives to sell the note *only to Plaintiffs*, since Plaintiffs had pending counterclaims against Harris and Harris <u>also</u> had an outstanding third-lien note[28] Plaintiffs were willing to simultaneously resolve – thereby getting Harris completely out of protracted litigation. No third-party purchaser could offer that complete litigation resolution.

Despite the District Court's skepticism regarding Plaintiffs' allegations of likely FPD Board disapproval and subsequent settlement with Harris, it should have viewed Plaintiffs' reliance and damages allegations in a light most favorable to Plaintiffs and denied dismissal. [See: *Ashcroft v. Iqbal, supra.*] Its failure to do so was reversible error.

---

[26] **Defendants totally fabricated Plaintiffs' position** as alleging "they could have threatened [FPD and Harris] and intimidated them into backing out of the sale and settling". [Doc29p33] Far from "threats and intimidation", Plaintiffs alleged the FPD Board would likely have denied approval of FPD's $14M gamble if provided a full and fair description of the pending protracted litigation – as opposed to Dennis White's slanted incomplete report. Undisclosed (by White) litigation issues and risks have since resulted in the Illinois Appellate Court *reversing* the summary foreclosure, and recognizing that viable defenses and counterclaims were alleged – potentially invalidating the Note and mortgage.

[27] The *Baker* (taxpayer suit) court only dismissed the claim that FPD violated the Open Meetings Law due to the 60-day statute of limitation - and *not* based on any lack of merit. Regardless, FPD Board members' *actual stated concerns* (about getting involved in the foreclosure suit) would have enabled Plaintiffs to present a more complete and accurate description thereof at the next scheduled public meeting.

[28] Harris did settle that third-lien note, at a substantial discount, to be released from Plaintiffs' counterclaims.

### E.  CONSPIRACY, AIDING & ABETTING, KELDERMANS FRAUD (Count Five)

Dismissal of the fraud claim against Keldermans and FPD was reversible error. Since

dismissal of the conspiracy and aiding and abetting claims (as to all Defendants except USA)

depended on the erroneous finding that "there is no underlying fraud claim" [A-1p15¶2], it was

error for the District Court to dismiss the related conspiracy and aiding and abetting claims

alleged separately as to each Defendant (excluding U.S.) in Count Five. [R60p20¶¶53-58]

### F.  FRAUD BY McGINLEY, PARTNERS AND FPD (Count Six)

Robert McGinley ("McGinley") and McGinley Partners ("Partners") had a second-lien

against the Estate, and thus an interest in resolving suit in favor of secured creditors. Plaintiffs

alleged McGinley's and Partners' false statements and concealments, and their collusion with

FPD, which the District Court did not reject (dismissing on rejection of Plaintiffs' reliance and

damages allegations). Unbeknownst to Plaintiffs, McGinley was secretly working with FPD to

assist its acquiring the Note, mortgage and Estate, providing FPD detailed information about the

Cannons (his long-time neighbors, tenants and Estate owners), along with meetings where he

provided maps and ideas for FPD's potential use of the Estate.

Plaintiffs factually alleged McGinley's multiple acts of fraudulent misrepresentation and

concealment, including false statements: that he wanted to meet to discuss the Conservation Trust;

and, that a "group of neighbors"[29] was interested in acquiring or sharing Estate ownership.

[R60pp24-27¶¶59-65; R60-2pp73,75-76,89,92-93; Doc17pp41-42] In reality, McGinley was

representing FPD seeking confidential information about Plaintiffs' litigation and settlement

strategies, Estate use, and willingness to share title. Plaintiffs further alleged, in reliance upon

McGinley's misidentification, they disclosed to McGinley their willingness to share title with this

---

[29] Merriam-Webster's Dictionary defines *neighbor* as "a person who lives near another".

"group of neighbors", details of their litigation strategy and plans, existing and planned use of the Estate, and that Richard Cannon was currently residing in a house on the Estate ("Hunt Ridge"). Had McGinley truthfully disclosed the interested party he represented was not a "group of neighbors" but was instead the politically powerful FPD, which he had a duty to disclose once he misidentified (deceptive conduct) and was asked to further identify the "group of neighbors"[30], Plaintiffs would never have made the disclosures they did.

McGinley shared Plaintiffs' information with FPD, given Keldermans' *next-day* offer to allow Plaintiffs to retain Hunt Ridge. The *extent* of FPD use of fraudulently-obtained information, and damages therefrom, will be determined through discovery.

Additionally, when the "unidentified party" sought permission to enter and inspect the Estate, Plaintiffs' reliance on McGinley's misidentification led them to believe the interested party was *not the FPD* and induced them to refrain from promptly investigating FPD's plan and opposing it before the FPD Board. It was error for the District Court to reach contrary fact findings of causation, and to require entering into the transaction proposed by McGinley.

## III.  CONCLUSION

On motions to dismiss, the District Court made numerous inappropriate findings of fact, as well as numerous fact-dependent determinations and misapplications of law, all of which are contrary to allegations in the SAC. Defendants ignore the law requiring the Court to accept as true all plausible facts alleged by Plaintiffs and, instead, ask this Court to condone, and to make further, findings contrary to Plaintiffs' allegations.

---

[30] McGinley did not just "fail to disclose" who was interested, but indicated (by falsely stating it was a "group of neighbors") it was *not the FPD*. That false statement was deceptive conduct that imposed upon him a duty to disclose the truth – particularly given his knowing Plaintiffs did not want to deal with FPD.

17

There has been no discovery through which to obtain supporting evidence, nor any trial under which that evidence and related testimony would have been evaluated by a jury. Yet Defendants treat this case as if discovery had been completed and a judgment had been issued in their favor, setting forth their own *competing versions* of the facts, and arguing contradictory interpretations and evaluations of the documents, as well as (for the first time, on appeal) the import of determinations made in Illinois state courtrooms. All such matters should be reserved for trial, or at the very least on fully-briefed motion for summary judgment, *after* the parties are given a full opportunity to take discovery. It was reversible error for the District Court to address and rule on the *merits* and likelihood of Plaintiffs' allegations, and to make contrary factual determinations, in context of Defendants' motions to dismiss.

Further, the District Court misinterpreted and misapplied authorities without recognizing, and accepting as true, Plaintiffs' factual allegations which distinguish from those authorities. Plaintiffs respectfully ask this Court to reverse the judgment below and to remand this entire case, including each of the six Counts alleged, for further proceedings and a trial on the merits.

Respectfully submitted,

/s/ Richard Kirk Cannon
Richard Kirk Cannon (3129009)
Law Offices of Cannon & Associates
117 S. Cook St., #361
Barrington, IL 60010-4311
TEL: (847) 381-1600
FAX: (847) 381-6650
EMAIL: rkcannon@cannoniplaw.com
*Attorneys for Plaintiffs/Appellants, and pro se*

**Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and in accordance with Circuit Rule 32 this document contains 6699 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2016 in Times New Roman, 12-pt. type (11-pt. in the footnotes).

/s/ Richard Kirk Cannon

*Attorney for Plaintiffs/Appellants, and pro se*

Dated: June 14, 2017

CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2017, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Richard Kirk Cannon
